```
 1                  UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                       NORTHERN DIVISION

 3

 4   JIMMY ANTHONY                                      PLAINTIFF

 5   VERSUS                 CIVIL ACTION NO. 3:23-CV-00132-KHJ-MTP

 6   JONATHON WELKER AND JACOB LANG                    DEFENDANTS

 7

 8

 9                       JURY TRIAL TRANSCRIPT,
                           APRIL 25, 2025,
10                          VOLUME 4 OF 4

11          BEFORE THE HONORABLE KRISTI H. JOHNSON,
          UNITED STATES DISTRICT COURT JUDGE, AND A JURY,
12                   THAD COCHRAN COURTHOUSE,
                       JACKSON, MISSISSIPPI
13

14
     APPEARANCES:
15
     FOR THE PLAINTIFF:         JAMES B. LEES, JR., ESQ.
16                              BRANDON L. FLECHAS, ESQ.

17
     FOR THE DEFENDANTS:        W. THOMAS SILER, JR., ESQ.
18                              MALLORY K. BLAND, ESQ.

19

20

21
     REPORTED BY:
22
         CANDICE S. CRANE, RPR, RCR, CCR #1781
23       OFFICIAL COURT REPORTER
         501 E. Court Street, Suite 2.500
24       Jackson, Mississippi 39201
         Telephone:  (601)608-4187
25       E-mail:  Candice_Crane@mssd.uscourts.gov
```

1                    **TABLE OF CONTENTS**

2   Style and appearances................................. 482

3   PUNITIVE PHASE

4   Oral Arguments (jury out)............................. 484

5   Proffer by Mr. Lees................................... 497

6   The Plaintiff Rests................................... 498

7   WITNESS:  JACOB LANG

8        Direct by Mr. Siler.............................. 499

9        Cross by Mr. Lees................................ 503

10  WITNESS:  JONATHON WELKER

11       Direct by Mr. Siler.............................. 505

12  Jury Charge........................................... 508

13  CLOSING ARGUMENTS:

14       By Mr. Lees...................................... 512

15       By Mr. Siler..................................... 519

16  Verdict............................................... 526

17  Certificate of Court Reporter........................529

18

19

20

21

22

23

24

25

```
 1            IN OPEN COURT, APRIL 25, 2025

 2

 3        THE COURT:  All right.  We've got a couple of things

 4    to address this morning before we bring the jury in.  I

 5    guess I'll first start with Mr. Flechas sent an email to the

 6    Court this morning, and it says that the plaintiff requests

 7    an order limiting arguments to prevent any reference to the

 8    plaintiff, his past behavior, or any mention of where the

 9    proceeds of punitive damages, if awarded, will go.  The jury

10    determined credibility in its verdict at the close of

11    evidence, and today is solely about the defendants and their

12    conduct, not the plaintiff.  Arguments and evidence should

13    be limited as such.

14        What's the defendants' response to that?

15        MR. SILER:  Your Honor, I think we should be able to

16    argue anything that's in the record, and I don't see any

17    reason why we should be limited.  And I don't see why we

18    should be telling the jury to put one hand over its eyes as

19    it makes a decision about this.  Everything in the record

20    was already admitted.  It's there, and there shouldn't be

21    any limitations on what parts of the record we use.

22        THE COURT:  What is the relevance -- with respect to

23    punitive damages that is directly addressing the defendants'

24    conduct, what is the relevance to the plaintiff and how the

25    plaintiff -- specifically, they're saying the plaintiff's
```

1    past behavior, any mention of where the proceeds would go,

2    what relevance does that have to do with the defendants'

3    conduct?

4         MR. SILER:  Your Honor, the -- the relevance to the

5    defendants' conduct with respect to a punitive damages claim

6    is that the jury still has to weigh whether penalties should

7    be assessed against these defendants, and in weighing the

8    actions that the defendants undertook, in weighing the

9    potential closeness of the verdict -- I don't know what the

10   jury was deciding, how they decided -- whether this was a

11   compromise verdict, whether it was -- you know, we just

12   don't know what the basis of the jury's decision was.  And

13   we shouldn't be handcuffed to not be able to use record

14   evidence to deal with the facts of this case and how close

15   they are in many respects.

16        THE COURT:  Okay.  The Fifth Circuit case that we

17   found specifically talks about how the focus is on the

18   defendants' conduct rather than on the plaintiff's, and

19   that's *Jenkins versus Raymark Industries*, *Inc.*, 782 F.2d

20   468.  It's a Fifth Circuit, 1986.

21        Specifically as to any reference to the plaintiff's

22   past behavior or anything about where he's going to spend

23   the proceeds -- if there's discussion about the day in

24   question, I think that's fine.  But with respect to anything

25   about meth addiction, domestic violence past, where he -- I

1    mean, there was an inference during closing where he's going

2    to spend his money.  I don't think any of that is

3    appropriate for punitive damages.

4         All right.  And that's the Court's ruling with

5    respect to that.

6         MR. SILER:  All right.  Your Honor, while we're

7    talking about what can be said in closing argument.

8    Yesterday in closing argument, counsel referenced, I think a

9    couple of times, and I was just having to make split-second

10   decisions about whether to object during closing argument or

11   let it go.  And I, for a variety of reasons, decided to let

12   it go.  I won't get into them unless the Court wants to

13   know.

14        But there is a prohibition in the Fifth Circuit Court

15   of Appeals about appealing to the conscience of the

16   community or that the jury is the conscience of the

17   community.  And what I would ask the Court to do would be to

18   instruct plaintiff's counsel, whoever's going to be making

19   the argument, that they cannot refer to the jury as the

20   conscience of the community or they ought to be saying

21   anything that -- that invokes their -- what they believe

22   their role to be in being the conscience of the community.

23        And I would refer the Court to -- excuse me -- the

24   case of *Learmonth versus Sears Roebuck & Company*, 631 F.3d

25   724 at page 732.  It's a 2011 Fifth Circuit opinion that it

1    is inappropriate to be making those kind of -- for counsel

2    to make those kind of comments during closing argument.

3         THE COURT:  Okay.  And, Mr. Flechas, you all have

4    time to research that case.  The Court will -- I mean, I

5    can't rule on it right now, because I've not pulled it up.

6    That sounds correct to me, that that should not be done, and

7    so I would just caution counsel just to work within the

8    bounds of what the Fifth Circuit requires for purposes of

9    the argument on punitives.

10        MR. LEES:  May I just inquire, is that case

11   applicable to a punitive damage part of the proceedings?

12        THE COURT:  I've not read it, Mr. Lees.  But I'm just

13   saying between now and whenever you give your argument, take

14   a look at it.

15        MR. LEES:  Yes, ma'am.

16        THE COURT:  And my advice is to stay within the

17   bounds of what the Fifth Circuit says is appropriate.

18        MR. LEES:  Yes, ma'am.

19        THE COURT:  That way if a verdict comes back either

20   way, nobody has to argue about what was said was appropriate

21   or not.

22        All right.  Anything else with respect to that,

23   Mr. Siler?

24        MR. SILER:  No, Your Honor.

25        THE COURT:  All right.  Next, we received some

1   communications related to the punitive instruction.  The

2   defense -- I mean, the plaintiff sent some language asking

3   the Court to instruct the jury as to 18 U.S.C. Section 242,

4   which is a color of law federal offense against -- with

5   civil rights violations.

6       And then Ms. Bland, for the defense's part, sent me

7   hundreds of pages of documents.  Although she intended to

8   send last night, I still don't have time to read hundreds of

9   pages of documents.  But, nevertheless, we have figured out

10  what you were pointing us to, and so it doesn't change the

11  fact that the Court's going to give the instruction as I'm

12  going to give it.

13      I'm not going to add the plaintiff's language.  But I

14  will say that the punitive pattern that we're giving notes

15  that we would include that civil and criminal sanctions

16  prong for comparable conduct if there's evidence presented

17  as to that.

18      And so during this phase if you intend to put on

19  evidence, whether it be through the officers or otherwise,

20  about if they are aware that they could be prosecuted for

21  the use of excessive force, something along those lines,

22  however you want to handle it is fine.  But the Court's not

23  going to specifically instruct as to a specific criminal

24  law.

25      Yes, sir.  You may go to the podium.

```
 1            MR. LEES:  Just -- I just need to make a record --
 2            THE COURT:  It's fine.
 3            MR. LEES:  -- in deference to the Court.  So, Your
 4       Honor, that puts us in a bit of a conundrum, because we're
 5       asking you to take judicial notice of a federal criminal
 6       statute and to apprise the jury of that statute in your
 7       closing -- or excuse me -- in your instructions.
 8            Given your ruling, that would require us to present
 9       evidence.  We attempted to contact several law professors
10       last night to see if they were available to come in in the
11       event that the Court decided not to take judicial notice.
12       And we were unable on short notice to get those witnesses.
13            So there would be -- it would be impossible for the
14       plaintiff to present evidence of the existence of the
15       federal criminal statute.  And not to belabor the point,
16       this jury has found these officers, admittedly under a
17       preponderance standard, committed acts, which if found to
18       have been committed under a reasonable doubt standard, are
19       criminal acts under the federal system.
20            These are the exact -- the statute that I've cited,
21       18 U.S.C. 242, is the exact statute police officers around
22       the country are prosecuted on by the Justice Department,
23       including the Rodney King case and those that follow suit.
24       The penalties, obviously, are ten years in jail and up to
25       $250,000 in fine.  I can -- you know, without judicial
```

1    notice and that being communicated, I have no way to present

2    the fact that such a statute exists to the jury for the

3    purposes of my argument.

4        I would simply ask the Court to reconsider our

5    request to take judicial notice of the existence so as to

6    inform the jurors.  In the absence of that, I would request

7    a recess until next Monday and give us time to find a law

8    professor or an Assistant U.S. Attorney who we could bring

9    to the Court to testify to the existence of that statute and

10   what the criminal penalties are.

11       I will frankly say this just to make sure my record

12   is correct.  I hold no false belief that at this point in

13   time, with the closing argument that was made in the

14   underlying case in which not a single solitary reference was

15   made in that closing argument to link the behavior of Jimmy

16   Anthony and the 404(b) evidence that this Court admitted.

17   His reputation evidence and character evidence which was

18   admitted pretrial, over the objection of the plaintiff, for

19   the purpose, as I understand your ruling, for the state of

20   mind of the officers at the time they committed the acts.

21       Yet when we got to the end of the case, a closing

22   argument was delivered that never referenced that evidence

23   in the context of the state of mind of the officers for

24   which it was argued and proffered to the Court.

25       Instead, it was offered and proffered as part of an

1    argument that this was a money grab for a meth addict who

2    was undeserving of receiving an award, and that bell has

3    been rung.  And, obviously, I think both sides have

4    preserved their record on that.

5           We are simply trying, at this point, to get somewhat

6    of a fair shake, so that this jury understands this is the

7    type of behavior that the Justice Department usually arrests

8    police officers for, prosecutes them, and puts them in jail.

9    And this is our only opportunity to have that jury at least

10   have that information for purposes of considering whether

11   they want to punish these officers or not --

12          THE COURT:  Let me stop you for a second, Mr. Lees.

13          MR. LEES:  Yeah.

14          THE COURT:  So how it was presented to me by email

15   was that -- that you all wanted me to instruct the jury

16   through the jury instructions.  I think it's a different

17   question of can the statute be read into the record, and you

18   ask the Court in front of the jury to take judicial notice

19   of a statute.  I think that's a different scenario than you

20   asking me to instruct the jury on a statute so --

21          MR. LEES:  You are -- you are correct.  We had a

22   misunderstanding.  I thought you were ruling we needed to

23   put evidence on of that.

24          Yes, that would be satisfactory to the plaintiff.  If

25   we could read the statute and the fine, and ask the Court to

 1    take judicial notice of that, that would satisfy the

 2    plaintiff's request on that piece of evidence.  And believe

 3    me, we were trying to find somebody to come in and testify

 4    to that.

 5        THE COURT:  Let me ask you this -- well, I won't ask.

 6    I don't want to lead in any way.

 7        Okay.  Before I -- let me look into this with respect

 8    to the statute.  I think taking judicial notice of a federal

 9    statute is completely within my purview, but let me just

10    take a look to see if there's some type of -- if I take

11    judicial notice of the statute, if there's an instruction

12    that I give to the jury at that point as to what that means,

13    and so I'll need to have that ready to do.

14        MR. LEES:  For your benefit, the deprivation of

15    rights statute under which officers are prosecuted is 18

16    U.S.C. 242.  The penalty, which is not set forth in the

17    statute, is set forth in 18 U.S. Code, Section 3571, which

18    sets forth the fines which is up to $250,000 for that

19    felony.  Thank you.

20        THE COURT:  All right.  Well, are you asking the

21    Court, or would you be asking the Court to take judicial

22    notice of both statutes?

23        MR. LEES:  Yes.

24        THE COURT:  All right.  What's the defendants'

25    response as to that?  I know that the Court can take --

1   okay, go ahead.  Go ahead, Ms. Bland.

2       MS. BLAND:  Yes.  As contained in the authorities I

3   sent you this morning, I did put pin cites in there to the

4   pages, the specific pages.  That factor is there as a

5   protection to the defendants.  It was developed for a

6   post-verdict review to determine if the verdict violates the

7   defendants' due process rights.

8       It is not meant as a sword for plaintiffs to come in

9   at the last minute with virtually no notice to defendants

10  and start picking criminal statutes out of a hat.  It is

11  prejudicial to defendants and violates their due process

12  rights to try to turn a civil trial into a criminal trial

13  without the due process protections of a criminal trial,

14  including the notice, the burden of proof, and the mens rea

15  requirements.  And it is also, as those authorities note,

16  highly confusing to the jury to do so.

17      So we would object -- well, you've already ruled that

18  you're not going to put it in your jury instruction, but we

19  would also object to it being put in front of the jury at

20  all.

21      And also, as you noted, the pattern jury instructions

22  for the Fifth Circuit do note that the factors should only

23  be given if evidence regarding criminal or civil sanctions

24  for comparable conduct has been presented at trial.  I know

25  this is somewhat because of the timing at which I'm having

1    to do this.  But at this point, I can only go on what I

2    have, and no evidence has been proffered to the jury at this

3    point.  So I believe it would also be inappropriate for that

4    reason as well.

5         I would also just like to remind the Court that

6    pursuant to the order on the motion *in limine*, the plaintiff

7    is prohibited from suggesting to the jury a specific amount

8    of punitive damages.  So I'm just putting that reminder out

9    there as well.

10        THE COURT:  Okay.  All right.  Anything else that we

11   need to take up argument-wise or evidence-wise or anything?

12   I'm going to take a quick recess before we bring in the

13   jury.

14        MR. LEES:  Not by the plaintiff, Your Honor.

15        MR. SILER:  Not by the defendants, Your Honor.

16        THE COURT:  All right.  I'm going to take a quick

17   recess, and I'll be back in.

18             (A brief recess was taken.)

19        MS. POWELL:  All rise.

20        THE COURT:  All right.  So with respect to taking

21   judicial notice of the statute, I just am going to give you

22   an idea of what my instruction to the jury's going to be in

23   case anybody wants to tweak it.  It's going to be very bare

24   bones and basic.

25        Mr. Lees, you can, before you read the statutes, just

1  indicate that you're asking the Court to take judicial

2  notice of them, read them, and then the Court will take

3  judicial notice of them.  And then I will tell the jury that

4  when a Court takes judicial notice, you must accept as

5  proved facts which the Court takes judicial notice of.

6       The Court takes judicial notice that the two statutes

7  or laws that Mr. Lees has read into the record are, in fact,

8  federal statutes or laws.

9       MR. LEES:  Thank you, Your Honor.

10      THE COURT:  Okay.  I'm not going to say what the laws

11  are or -- I didn't know if you needed to say anything.

12      MR. SILER:  Oh, I apologize.  I was just making

13  certain that we felt like we had made enough of an objection

14  about the confusion to the jury and all the things that come

15  with them just reading a statute, a criminal statute,

16  because this is not a criminal case.

17      We've never had notice of this prior to about 10:30

18  or so last night, and with all the different burdens and

19  protections and so forth, it just -- we're opposed to it,

20  but you know that.

21      THE COURT:  All right.  Thank you.  Anything else we

22  need to take up before we bring in the jury?

23      MR. LEES:  Not by the plaintiff, Your Honor.

24      THE COURT:  Oh, I guess let me have an idea of what

25  it's going to look like.  What's it going to look like going

1    forward?  What does the plaintiff intend to do, and then

2    I'll ask the same of Mr. Siler.

3         MR. LEES:  The plaintiff is going to stand and ask

4    the Court to take judicial notice of 18 U.S. Code 292.  I'll

5    read the title, and then I'll read that part of the statute

6    which is pertinent to this case.  I'll leave out all the

7    other stuff.  And then I'll ask the Court to take judicial

8    notice of 18 U.S.C. 3571, which sets a possible fine for up

9    to $250,000 for a conviction of the offense involving bodily

10   injury.

11        THE COURT:  Go through both, and then I'll take

12   judicial notice of both and then read my instruction.

13        Okay.  And then from the defendants, Mr. Siler?

14        MR. LEES:  And I will have no further evidence.

15        THE COURT:  Okay.

16        MR. SILER:  Your Honor, we are planning on calling

17   the defendants about their financial situation, but that

18   would be the only reason.  They should be very short.

19        THE COURT:  Okay.  All right.  So let's plan to do

20   this -- I'm just trying to think through the rest of the

21   morning.  We'll do that.  Depending on how short that is,

22   Mr. Siler, what I may do is go ahead and instruct them after

23   that, depending on how long the testimony takes, let them

24   take a quick break, and then we'll do the short closings per

25   side.  All right?

```
 1            All right.  Thank you both.  We can bring in the
 2   jury.
 3                     (Jury in at 9:15 a.m.)
 4            THE COURT:  All right.  You may be seated.
 5            Good morning.  By show of hands, who recalls the
 6   Court's instructions?  The Court's instructions by show of
 7   hands?  All right.  I see all hands.
 8            By show of hands, who followed the Court's
 9   instructions?  All right, great.  I see all hands.
10            All right.  We're moving on to the punitive damage
11   instruction of this -- I mean, phase of this trial.  We will
12   hear from the plaintiffs first, and then we'll hear from the
13   defendants.  And then I will instruct you, and you will hear
14   closings.  But we'll start with the plaintiff this morning.
15            Mr. Lees?
16            MR. LEES:  Thank you, Your Honor.
17            Your Honor, at this time, the plaintiff would ask the
18   Court to take judicial notice of two federal statutes under
19   the United States Code.  The first statute is 18, United
20   States Code, Section 242, which is entitled "Deprivation of
21   Rights Under Color of Law."  In pertinent part, the
22   plaintiff asks the Court to take judicial notice of the
23   following language in that statute, quote, Whoever, under
24   color of any law, statute, ordinance, regulation, or custom,
25   willfully subjects any person in any state, territory,
```

1    commonwealth, possession, or district to be deprived of any

2    rights, privileges, or immunities secured or protected by

3    the Constitution or the laws of the United States shall be

4    fined under this title or imprisoned not more than one year

5    or both.  And if bodily injury results from the acts

6    committed in violation of this section shall be fined or

7    imprisoned not more than ten years or both.

8         18, United States Code, 3571, in pertinent part,

9    states that a fine for an offense under that statute for

10    causing bodily injury can be up to, but not exceed, $250,000

11    for the individual committing said offense.

12         We'd ask the Court to take judicial notices of those

13    two statutes, please.

14         THE COURT:  Okay.  To the jury, when a Court takes

15    judicial notice, you must accept as proved facts of which

16    the Court takes judicial notice.  The Court takes judicial

17    notice that the two statutes that Mr. Lees just read into

18    the record are, in fact, federal statutes.

19         All right.  Thank you, Mr. Lees.

20         MR. LEES:  Thank you, Your Honor.  The plaintiffs

21    have no further evidence to present.  Plaintiffs rest.

22         THE COURT:  Mr. Siler?

23         MR. SILER:  Thank you, Your Honor.

24         We're going to put on a very small amount of proof,

25    so at this time, the defendants would call Mr. Jacob Lang to

1    the stand.

2        THE COURT:  All right.  Mr. Lang, if you'll come to

3    the stand, please.  I'm going to have you resworn in.  If

4    you'd place your left hand on the Bible and raise your right

5    hand.

6                        **JACOB LANG,**

7            **having been first duly sworn, was examined and**

8    **testified as follows...**

9                    **DIRECT EXAMINATION**

10   **BY MR. SILER:**

11   Q.    All right.  Mr. Lang, since we're going through all

12   this again, would you state for the name -- I mean, for the

13   record, your -- your full name, please.

14   A.    Jacob Lang.

15   Q.    Okay.  Mr. Lang, this part of the trial, we're going

16   to talk a little bit about your financial abilities to pay

17   and what you've got in terms of assets that you own and your

18   financial situation a little bit.

19        Do you own a house or a residence?

20   A.    Yes, sir.

21   Q.    Okay.  And are you a joint owner of that house or

22   residence with someone else?

23   A.    Yes, sir.

24   Q.    Who is that?

25   A.    My wife.

```
 1   Q.     Okay.  And do you have a mortgage on that house or

 2   residence?

 3   A.     Yes, sir.

 4   Q.     And how long is that mortgage?

 5   A.     It's a 30-year mortgage.

 6   Q.     Okay.  And how far are you into that mortgage?

 7   A.     Only about two years.

 8   Q.     So you've got roughly 28 years left to pay on your

 9   mortgage for your current house; is that correct?

10   A.     Yes, sir.

11   Q.     Do you have any other assets?

12   A.     Only my vehicle.

13   Q.     Okay.  And what is your vehicle?

14   A.     It's a 2017 Ford F250.

15   Q.     Okay.  And do you know approximately what it's worth?

16   A.     I would say 25, $30,000.

17   Q.     Okay.  And do you have a loan on that vehicle?

18   A.     Yes, sir.

19   Q.     And how much of that do you owe?

20   A.     I would say more than it's worth, probably 35,000.

21   Q.     Okay.  You said you didn't have any other assets, but

22   do you have bank accounts and things of that nature?

23   A.     Yes, sir.

24   Q.     Okay.  Do you have a checking account?

25   A.     Yes, sir.
```

```
 1    Q.      Okay.  Is the balance in that checking account --
 2    well, can you tell us what the balance roughly is in that
 3    checking account?
 4    A.      I mean, I have a joint with my wife.  My account, our
 5    joint, is maybe $8,000 or so.
 6    Q.      Okay.  The -- your -- you currently -- I think you
 7    said you were doing some law enforcement work for the City
 8    of Flora; is that correct?
 9    A.      Yes, sir.
10    Q.      Okay.  And are you a part-time or full-time employee
11    there?
12    A.      I'm a part-time employee.
13    Q.      How many -- what's your normal schedule?
14    A.      I kind of make my own schedule being part time, but I
15    usually work -- I mean, I've been off on baby leave here for
16    the past few months, so I haven't worked much at all.  But I
17    have usually, I would say 15 hours a week or so.
18    Q.      All right.  Do you have any other forms of employment
19    or that you receive any other income from other than that
20    part-time position?
21    A.      Yes, sir.
22    Q.      Okay.  And what -- what are they?
23    A.      I work for a roofing company selling roofs, and also
24    I work for a dumpster company hauling dumpsters.
25    Q.      All right.  And how are you compensated for those two
```

1    jobs?

2    A.    They're commission-based only.  So if I sell a roof,

3    then I get paid.  And depending on how many dumpsters I

4    haul, I get paid on that as well.

5    Q.    Okay.  Do you sell roofs -- or tell me how often you

6    sell roofs.

7    A.    The last roof I sold was probably, I would say, two

8    months ago or so.

9    Q.    All right.  And what about the dumpsters, how often

10   are you dealing with them?

11   A.    I mean, they -- they come and go depending on, like,

12   you've got the weather, the permits, and everything, so, I

13   mean, you have busier months and slower months.  So, I mean,

14   I've tried to stay as busy as I can, but it varies.

15   Q.    Okay.  Can you give us some estimate of what your

16   income is from the dumpster work that you do?

17   A.    I would say -- and it could be anywhere from a

18   thousand dollars a month to maybe $4,000 a month.

19   Q.    All right.  How often do you have the 4,000 -- the

20   upper end of the -- those kind of months, how often do you

21   have them?

22   A.    During the nicer weather times.

23         MR. SILER:  All right.  No further questions, Your

24   Honor.

25         THE COURT:  All right.  Thank you, Mr. Siler.

1          Mr. Lees.

2                        **CROSS-EXAMINATION**

3    **BY MR. LEES:**

4    Q.    Officer Lang, you heard the jury verdict yesterday;

5    correct?

6    A.    Yes, sir.

7    Q.    I'm going to give you an opportunity.  Is there

8    anything else you'd like to say to this jury?

9          MR. SILER:  Objection.  That goes beyond the cross of

10   what I put him on the stand for.  It's not appropriate for

11   him to go beyond my -- my direct questioning at this point,

12   Your Honor.

13         THE COURT:  All right.  Counsel, please approach.

14                       (BEFORE THE BENCH)

15         THE COURT:  I'll let you respond, Mr. Lees.

16         MR. LEES:  Very simply, if the officer just accepts

17   responsibility, I'll drop the punitive damage claim.

18         MR. SILER:  I think he'll say that, because he's

19   already -- he already did it.  He already said it.

20         MR. LEES:  No, he didn't.

21         THE COURT:  Don't talk too loud.

22         Shone, if you'll turn that up a little bit, please.

23         All right.  Go ahead.

24         MR. SILER:  I want to make sure I understand what you

25   said.  If he accepts responsibility --

```
1           MR. LEES:  Admits what he did --

2           MR. SILER:  That he pushed his head?

3           MR. LEES:  -- that he slammed his head.

4           MR. SILER:  He can't do that --

5           MR. LEES:  And that he knows about the beating.

6           MR. SILER:  That he knows about the what?

7           MR. LEES:  The beating.  That he knows --

8           MR. SILER:  No, he can't do that.  So he can't -- he

9    can't go beyond that.  I put him on for a very limited

10   purpose and asked very few questions.  This goes well beyond

11   the scope of that.

12          THE COURT:  I agree with that, Mr. Lees.

13          MR. LEES:  Very well.

14          THE COURT:  All right.

15                      (IN OPEN COURT)

16          THE COURT:  You may proceed, Mr. Lees.

17          MR. LEES:  I have no further questions.

18          THE COURT:  All right.  You may --

19          MR. SILER:  You may step down, Mr. Lang.

20          And, at this point, I'll call Jonathon Welker.

21          THE COURT:  You may step down, Mr. Lang.

22          Mr. Welker, if you'll come forward for me.  If you'll

23   place your left hand on the Bible and raise your right hand

24   for me, we'll get you sworn back in.

25          All right.  You may be seated.
```

1                            JONATHON WELKER,

2                having been first duly sworn, was examined and

3      testified as follows...

4                          DIRECT EXAMINATION

5

6      BY MR. SILER:

7      Q.      All right.  For the record, can you state your name

8      for the jury, please.

9      A.      My name is Jonathon Welker.

10     Q.      All right.  Mr. Welker, I'm going to ask you very

11     similar questions to what I asked Mr. Lang a moment ago.

12             Are you married?

13     A.      No, sir.

14     Q.      Okay.  Do you have any children?

15     A.      Yes, sir.

16     Q.      Okay.  How many?

17     A.      One.

18     Q.      All right.  What assets, if any, do you have?

19     A.      I have a 2017 Toyota Tacoma.

20     Q.      I'm sorry.  A 2017 Toyota?

21     A.      Toyota Tacoma.

22     Q.      Tacoma, okay.  And do you have a loan on that, or do

23     you own it outright?

24     A.      I own it.  I paid it off a few years ago.

25     Q.      And how much is that worth; do you know?

```
 1   A.     It's pretty beat up.  If I had to take a shot, maybe
 2   15 to 20.
 3   Q.     Thousand dollars?
 4   A.     Yes, sir.
 5   Q.     Okay.  You, I think, told us the other day that you
 6   work for the Capitol Police Department.  Is that here in
 7   Jackson?
 8   A.     Yes, sir.
 9   Q.     Okay.  And if you would, do you -- or let me ask you
10   this:  Is that a full-time position?
11   A.     Yes, sir.
12   Q.     Okay.  And how much do you make there?
13   A.     My salary is 53.
14   Q.     Is that a full-time -- oh, you said it was a
15   full-time job.  Do you have any other sources of income?
16   A.     I'm in the guard.  So once a month -- I am in the
17   military.  I'm in the Air National Guard.
18   Q.     All right.  And what's the amount of income just
19   generally that you make in doing that?
20   A.     About 300, roughly, a paycheck.
21   Q.     Okay.  So would that be 300 a month?
22   A.     Yes, sir.
23   Q.     Okay.  Do you have a checking account?
24   A.     Yes, sir.
25   Q.     Okay.  And is it strictly in your name?
```

```
1    A.      Well, it's in my name and my mother's name, but, yes,

2    sir.

3    Q.      Okay.  And how much do you have in that checking

4    account?

5    A.      I now have 50 because through my divorce...

6    Q.      You have 50,000?

7    A.      From the house being sold, yes, sir.

8    Q.      Okay.  Do you pay child support?

9    A.      No, sir.

10   Q.      Okay.  Has the divorce been finalized?

11   A.      Yes, sir.

12           MR. SILER:  Okay.  I believe that's all the questions

13   I have, Your Honor.

14           THE COURT:  All right.  Any questions, Mr. Lees?

15           MR. LEES:  Your Honor, given the ruling for the prior

16   witness, could I approach the bench and just make my record

17   there rather than from here?

18           THE COURT:  You may.

19           MR. LEES:  Thank you.

20                         (BEFORE THE BENCH)

21           MR. LEES:  Your Honor, I would ask the same question

22   of this witness to give him an opportunity to make any

23   statements to the jury.  I'll also represent to counsel if

24   this witness recants his prior testimony and now tells us,

25   in my opinion, the truth as to what he did, that he beat my
```

1    client as alleged and the jury so found, I will withdraw the
2    punitive damage claim against him.
3         MR. SILER:  In my -- I'm not going to respond to
4    that.  But what I would say is that my argument's the same
5    as earlier, and it's beyond the scope of my examination.
6         THE COURT:  All right.  Thank you both.
7                        (IN OPEN COURT)
8         MR. LEES:  No questions.
9         THE COURT:  All right.  Thank you, Mr. Lees.
10    You may step down, Officer Welker.
11         THE WITNESS:  Yes, ma'am.
12         THE COURT:  Mr. Siler, any other evidence?
13         MR. SILER:  That concludes our evidence, Your Honor.
14         THE COURT:  Okay.  Counsel, we did move a little
15    faster than I thought we would.  So I am going to go ahead
16    and instruct the jury, and we can move right into the
17    closings.
18         All right.  Just like last time, I'm going to read
19    you the instruction, but I'm also going to give you a copy
20    of this instruction when you retire to deliberate.
21         Zoom that out just a little bit.
22         All right.  You have found that Defendants Jonathon
23    Welker and Jacob Lang are liable to Plaintiff Jimmy Anthony,
24    and awarded Plaintiff Jimmy Anthony the compensatory damages
25    that he has proved.  You may, in addition, award punitive

1     damages if you find that Defendants Jonathon Welker and

2     Jacob Lang acted with malice or with reckless indifference

3     to the rights of others.

4          One acts with malice when one purposefully or

5     knowingly violates another's rights or safety.  One acts

6     with reckless indifference to the rights of others when

7     one's conduct, under the circumstances, manifests a complete

8     lack of concern for the rights or safety of another.

9          Plaintiff Jimmy Anthony has the burden of proving

10    that punitive damages should be awarded by a preponderance

11    of the evidence.  The purpose of punitive damages is to

12    punish and deter, not to compensate.  Punitive damages serve

13    to punish a defendant for malicious or reckless conduct, and

14    by doing so, to deter others from engaging in similar

15    conduct in the future.

16         You are not required to award punitive damages.  If

17    you decide to award punitive damages, you must use sound

18    reason in setting the amount.  Your award of punitive

19    damages must not reflect bias, prejudice, or sympathy toward

20    any party.  You may impose punitive damages against neither

21    defendant, against only one defendant, or against both

22    defendants.

23         I'm sorry.  I'm reading the wrong thing.  Let me back

24    up.  Your award -- go back to page 1, Angela.  I'm sorry.  I

25    just want to start over on that.

1    Your award of punitive damages must not reflect bias,

2    prejudice, or sympathy toward any party.  It should be

3    presumed that Plaintiff Jimmy Anthony has been made whole by

4    compensatory damages, so punitive damages should be awarded

5    only if a defendant's misconduct is so reprehensible as to

6    warrant the imposition of further sanctions to achieve

7    punishment or deterrence.  Again, you may not hold a

8    defendant responsible for the actions or inactions of other

9    person -- any other person.

10    If you decide to award punitive damages, the

11    following factors should guide you in fixing the proper

12    amount:

13    Number 1, the reprehensibility of the defendants'

14    conduct, including but not limited to, whether there was

15    intended or reckless injury and whether the defendants'

16    conduct was motivated by an evil motive;

17    Number 2, the ratio between the punitive damages you

18    are considering awarding and the amount of harm that was

19    suffered by the victim;

20    Number 3, the possible criminal and civil sanctions

21    for comparable conduct.

22    You may consider a defendant's financial resources in

23    fixing the amount of punitive damages.  You may impose

24    punitive damages against neither defendant, against only one

25    defendant, or against both defendants.  You may also award

1    different amounts against Defendants Jonathon Welker and

2    Jacob Lang.

3        I have also prepared a verdict form for this

4    particular phase of the trial.  I'm going to go through that

5    verdict form with you.

6        Make sure it's the punitive one.  Before you put that

7    up there, is the word "malice" in the first sentence, the

8    first question?

9        MS. COSSAR:  Yes, it is.

10        THE COURT:  Put that up there for me, please.

11        MS. COSSAR:  Malice is in here.

12        THE COURT:  Put that up there for me.

13        All right, verdict form.  You're going to do similar

14    to what you did before in the sense of it's divided by

15    defendant.  The first defendant, Defendant Jonathon Welker,

16    the first question you must consider is, "Do you find that

17    Defendant Jonathon Welker acted with malice or with reckless

18    indifference to Plaintiff Jimmy Anthony's rights?"

19        You have to check "yes" or "no."

20        If you answer "yes" to Question 1, you will proceed

21    to Question 2.  If you answer "no" to Question 1, your

22    deliberations as to Defendant Jonathon Welker would be

23    complete.

24        If you go to Question 2 it's, "What amount, if any,

25    do you award as punitive damages against Defendant Jonathon

1    Welker?"  And there is a blank.

2         With respect to Defendant Jacob Lang, Question 3, "Do

3    you find that Defendant Jacob Lang acted with malice or with

4    reckless indifference to Plaintiff Jimmy Anthony's rights?"

5         You will check "yes" or "no."

6         If you answer "yes" to Question 3, you will proceed

7    to Question 4.  If you answered "no" to Question 3, your

8    deliberations as to Defendant Jacob Lang are complete.

9         As to Question 4, you will include what amount, if

10   any, do you award as punitive damages against Defendant

11   Jacob Lang.  You also will have the foreperson sign and date

12   the verdict form.

13        All right.  We will now proceed.  I have given each

14   side ten minutes for their closing, and so you will hear

15   their closing now.

16        MR. LEES:  May it please the Court, counsel.

17        Morning, ladies and gentlemen.  On behalf of Brandon

18   and I, I would like to thank you for your consideration of

19   the evidence and your verdict yesterday.  Unfortunately, the

20   law prohibited me from telling you at any time prior to you

21   returning a verdict that there would be this stage of the

22   case, so as to not influence or prejudice you in any

23   decision that you reached in the underlying verdict.

24        But I will tell you we're now at the stage of the

25   case that we have been waiting for and aiming for, and it's

```
 1    our position that this is the stage of the case where we
 2    want you to think long and hard about what you're about to
 3    do, and the ability that you have as eight people
 4    unanimously speaking out to the public about what occurred
 5    here and --
 6             MR. SILER:  Objection, Your Honor.
 7             THE COURT:  Counsel, please approach.
 8                        (BEFORE THE BENCH)
 9             MR. SILER:  Although he didn't use the words "the
10    conscience of the community," this is exactly the same type
11    of comment that the Fifth Circuit has said is inappropriate.
12    And they're trying to inflame the jury and get the jury to
13    believe and feel like that they're there to do something on
14    behalf of the community.  So we object to this, and I'm
15    trying to decide, frankly, about whether to move for a
16    mistrial or not because this is -- I may see -- I may not do
17    that at this time and see where it goes.  But this is
18    exactly the type of information I asked the Court to ask
19    counsel not to say to the jury.
20             THE COURT:  All right.  Mr. Lees?
21             MR. LEES:  So the predicate of punitive damages is to
22    deter conduct.  The deterrence comes from a group of people
23    unanimously speaking to the public so as to deter.  That's
24    all I said, these people, not the community, not on behalf
25    of the community.  These eight people speaking unanimously
```

1    to the public, so as to perform the function under the jury

2    instruction which is to deter.  I believe that's entirely

3    appropriate under the United States Supreme Court

4    understanding of punitive damages.

5        MR. SILER:  It's just -- it's just saying different

6    words for the same thing.

7        THE COURT:  Okay.  I'm going to overrule the

8    objection as based on what you specifically said, but I

9    would just be careful.

10        MR. LEES:  Yes, ma'am.

11                    (IN OPEN COURT)

12        THE COURT:  You may proceed.  Thank you.

13        I'm sorry; I was resetting the clock.

14        MR. LEES:  And as I was saying, we are at that point

15    now in the trial where unlike before, where the focus was on

16    compensation to Mr. Anthony, the focus now has nothing to do

17    with Mr. Anthony.  The focus now is on Jacob Lang and

18    Jonathon Welker, and if I may, I just want to highlight just

19    a few things here in the jury instructions.

20        So what is your purpose right now?  The purpose is

21    focusing on these two individuals and to consider making a

22    damage award, and you'll see two words, punish and deter.

23    Punish a defendant, okay, for malicious or reckless conduct,

24    and by doing so, to deter others from engaging in similar

25    conduct in the future.

1              In making that decision, you can consider certain

2    factors, and I want to point your attention to this.  One of

3    the factors you can consider is the possible criminal

4    sanctions for comparable conduct.  All right?

5              So punish these individuals for their conduct.  Speak

6    in such a way as to deter others from acting similarly, and

7    to guide you in doing that, look at what sanctions would or

8    could be like for this behavior under the criminal justice

9    system.

10             We have, thank goodness, a federal criminal statute

11   in the United States.  It's U.S. Code Section 242.  It's

12   called "Deprivation of Rights Under Color of Law."  "Under

13   color of law" simply means people acting under the color of

14   law as in a police officer, government official using that

15   position to deprive somebody of their constitutional rights.

16             One of the things we're all familiar with many, many

17   years ago -- maybe a couple of you are too young for it -- a

18   citizen in Los Angeles, California, by the name of Rodney

19   King was beaten.  This is the statute --

20             MR. SILER:  Objection, Your Honor, to him getting

21   into other kinds of cases that are not this case and trying

22   to make them appear to be comparable.  I find this

23   objectionable, and we'd ask the Court to instruct the jury

24   not to take that into consideration.

25             THE COURT:  Okay.  Overruled.

516

1          MR. LEES:  This is the statute that is used by the

2     criminal justice system to take and punish officers in this

3     country who do the type of acts you have found that these

4     officers did.  The specific statute for this crime is ten

5     years in prison, up to ten years in prison, and up to

6     $250,000 of a fine for being arrested and convicted of these

7     acts.

8          There is now no way these officers will ever be

9     punished by jail time for these acts, but I implore you, as

10     eight people who can speak unanimously, to be clear in

11     making an award in this case that is designed, if not to

12     punish -- and I don't care if they could pay it or not.

13     Don't care.

14          What I do care about is you, as eight people on this

15     jury, speak out so as to deter other officers from engaging

16     in this type of behavior.  Use your voice.  Please use your

17     voice now and return a verdict of a minimum of what the

18     criminal fine is.  At least do that.  At least do that.

19          Thank you.

20          THE COURT:  All right.  Thank you, Mr. Lees.

21          Mr. Siler.

22          MR. SILER:  Can we approach the bench, Your Honor?

23          THE COURT:  You may.

24               (BEFORE THE BENCH)

25          MR. SILER:  Counsel's last comment was very clever,

1  and I give him credit for it.  According to the rulings on

2  the motion *in limine* --

3      THE COURT:  You're going to have to speak up for me.

4      MR. SILER:  The Court's rulings on the motion *in*

5  *limine* were that the plaintiffs could not mention a specific

6  amount to the jury for punitive damages.  And what counsel

7  just did was say a specific amount without using the number

8  by referring to the statute, and saying that they should

9  award the amount permitted by the statute.  And we view that

10  as a violation of the Court's order on the motion *in limine*

11  and would ask that be stricken and the jury instructed

12  they're not to consider that comment.

13      THE COURT:  Okay.  I'm going to overrule the

14  objection.  I will as you're going up, Mr. Siler, just

15  remind the jury that these are closing arguments, and the

16  statements made by counsel are not evidence.

17      MR. SILER:  Okay.

18      THE COURT:  And I only say that because I intended to

19  do it when you made an objection.  I usually say that when I

20  overrule an objection, and so just -- I'll just make that --

21  give that reminder.

22      MR. SILER:  Okay.  Now, he just made the comment --

23  and I'm asking because I don't want to say anything that's

24  going to get me in trouble.  So he just made the comment

25  that, I believe, as I wrote it down, that the focus was not

```
 1    going to be on Mr. Anthony and whether he gets the money,
 2    it's on punitive damages.
 3           Now, they have made the request to the Court that I
 4    not be permitted to say anything about who's getting the
 5    money on punitive damages.  That should open the door for me
 6    at least to be able to say that this is -- you know, they're
 7    just wanting more money, more money's going to him.
 8           THE COURT:  Okay.  I don't think that's appropriate.
 9           MR. SILER:  Okay.  Well, then let me ask this, too,
10    again, so I don't get myself in trouble --
11           THE COURT:  I mean, they know where the money's
12    going.
13           MR. SILER:  Not from what he said.  He suggested to
14    me, the way I heard it, was that Mr. Anthony wasn't going to
15    get it, and I wanted them to know that he will get this
16    money.
17           THE COURT:  I don't think that's appropriate.
18           MR. SILER:  All right.  Then the other thing I want
19    to say is, can I start out by saying here we are back at,
20    you know, asking for more money, just like I told you this
21    case was about, and not go any further than that?
22           THE COURT:  I'm fine with that.
23           MR. SILER:  Okay.  I just didn't want to run afoul of
24    your --
25           THE COURT:  I'm fine with that.
```

1          MR. SILER:  Thank you.

2          THE COURT:  Thank you.

3                    (IN OPEN COURT)

4          MR. SILER:  May it please the Court, Counsel.

5          My apologies, ladies and gentlemen.  Some of this

6    gets kind of technical.  We want to try to do our best to

7    follow the rules on this.

8          I told you way back at the beginning of this case it

9    was all about money, and here we are back again asking for

10   more money.  That's what we're about -- what this whole

11   thing has been about from the beginning.

12         You guys spent two, two and a half hours yesterday

13   working through this.  You came up with -- although

14   obviously we were asking for zero and thought we should have

15   gotten zero, we accept the award you gave.  We see how

16   it's -- you know, came from dispassionate, common sense

17   discussion about what to do.  I don't know whether there was

18   compromise in the discussions back there to come up with a

19   verdict or come up with some amount of money.  I'm certain

20   there was, and I appreciate the efforts that you put in to

21   do all that.  You know, it's just you guys were working

22   hard, and it's part of this process, and we appreciate it.

23         Now, I don't know yesterday what you considered and

24   what you thought you were giving money -- how -- what the

25   money was for.  I can only guess.  I don't know if you were

1    doing -- gave the money that you gave yesterday, awarded

2    yesterday, what it was awarded for, what -- you know, what

3    particular types of damages, what particular types of proof

4    that you were looking at.  And I don't know if you were

5    thinking about that this was a fair amount to compensate

6    Mr. Anthony for or what.

7          But my view and feeling was that you did your job

8    yesterday and that calling you back in here today and asking

9    you to give more money or award more money is something

10   that's not necessary.  And I think, as the Judge has

11   instructed you, you do not have to award punitive damages at

12   all.  It's strictly up to you --

13         MR. LEES:  Please note the plaintiff's objection to

14   that continuous argument about the money.

15         THE COURT:  Okay.  I'll overrule the objection, but I

16   do want to remind the jury -- we've had a number of

17   objections.  I do want to remind you all that these are

18   closing arguments, and if you remember I said what is not

19   evidence.  One of the things is arguments from lawyers, so

20   just keep that in mind as you listen to the arguments.

21         You may proceed, Mr. Siler.

22         MR. SILER:  Okay.  And I don't have much time, so let

23   me just jump to a couple other things real quick.

24         There was a reading of some criminal statutes and

25   suggestions by plaintiff's attorney that we ought to award

1    punitive damages somewhat consistent with the criminal

2    statutes.  This is not a criminal case.  As you heard the

3    Court, I think, instruct you about the burdens of proof and

4    how the burden of proof is different here than in a criminal

5    case.  There are other things that go into criminal cases

6    like willfulness, intent, mens rea, things that weren't

7    involved here.

8         The plaintiffs can't bring a criminal case.  The

9    government's got to do things of that nature.  So don't get

10   confused by some criminal statute that's got a lot more to

11   deal with than just what we've been dealing with here the

12   last couple of days.

13        And keep in mind when he suggests that you ought to

14   award the amounts of money mentioned by the criminal

15   statute, and I know what he's meaning is that reference to

16   $250,000, that the statute says up to that.  It doesn't say

17   that's the fine.  And, of course, you know, who knows -- you

18   don't know because you don't have -- not because you're not

19   bright enough to know, but you just don't have the

20   background to know how fines are rendered in these kind of

21   other cases and what's going on and how much is awarded and

22   how much isn't.  But that's a -- that's a red herring out

23   there just to hold something up and say, here, shoot for

24   this aspect of things.

25        The last thing I want to cover, you'll see in the

1   instructions on punitive damages, not only do you not have

2   to award punitive damages.  You may feel like you've awarded

3   all the money Mr. Anthony needs at this point to make him

4   whole in this process.  But, too, even if you were

5   considering punitive damages, that you are to consider the

6   defendants' financial conditions.

7       Punitive damages are not designed to cripple people

8   and make it so they and their families can't live and can't

9   go about their lives.  These guys are out working every day.

10  One of them has three jobs, and the other one has two jobs.

11  And they're out working to make a living to provide for

12  their -- in Mr. Lang's case, his wife and daughter; and

13  Mr. Welker's case his daughter, and deal, you know, with the

14  things in life all of us deal with.

15      And the purpose of this is not to cripple someone

16  financially.  But if you feel like you need to give them

17  some amount of money, which I propose that you shouldn't,

18  and you shouldn't feel any need to do that; that you take

19  into account that these are two young police officers.  They

20  don't make a lot of money.  They don't have a lot, and the

21  idea here is not to cripple them financially.  So I would

22  appreciate if you took that into account.

23      You guys did a good job yesterday.  Obviously, as I

24  said, we didn't -- we thought it should be zero because

25  that's what I argued.  But you obviously took some time.

 1    You took two and a half hours, you looked at this thing.

 2    You made a reasonable decision in all this, and I am

 3    comfortable leaving this question with you today that you're

 4    going to do the same thing in this situation.  And you can

 5    get through with this, you can remember -- matter of fact,

 6    let me grab -- sorry.  This gets cumbersome sometimes.

 7         But you can -- if you answer Question 1 "no," you're

 8    finished.  You don't have to argue -- not say argue --

 9    debate or get in discussions about the amount.

10         If you answer Question 3 "no," -- because they're the

11    same questions just directed to the different defendants --

12    then you don't have to get into discussions or lengthy

13    hearing -- or lengthy session today about how much it should

14    be, and we would argue to you that there's enough that's

15    been -- these gentlemen are having to deal with.  This is

16    going to be a stain on their record for the rest of their

17    lives.  They're doing what they can to work.

18         They told you during the case that they -- you know,

19    after seeing those videos, how embarrassed they were and

20    sorry for the fact that they didn't conduct themselves in a

21    professional manner.

22         They get the message.  They get the message.  They

23    know they're going to have to deal with this forever.  And

24    at least they're out trying to work and trying to get things

25    done.  So we would ask of you to give the same amount of

1    dispassionate common sense to the discussions about punitive

2    damages as you did yesterday on the compensatory damages

3    question, and -- and we leave it in your hands.

4         Thank you.

5         THE COURT:  All right.  Thank you, Mr. Siler.

6         All right.  You may now go retire to deliberate.  I'm

7    going to bring you back there shortly your instruction and

8    the verdict form.  You may be dismissed.

9         MS. POWELL:  All rise.

10            (Jury out for deliberations at 9:59 a.m.)

11        THE COURT:  All right.  You may be seated.

12        Just stay close, if you will, and we will call if we

13   have a question or the verdict.  Court will be in recess

14   until then.

15        MS. POWELL:  All rise.

16        MR. LEES:  Your Honor, at some point, I need to put

17   one additional thing on the record.

18        THE COURT:  All right.  Let's go ahead and do that

19   now.

20        MR. LEES:  Sorry about that.

21        THE COURT:  It's okay.

22        MR. LEES:  Your Honor, I would just ask that the

23   record reflect that when we were at the bench at the time

24   that there was an objection made to my question to Officer

25   Lang, that plaintiffs made an offer that if Officer Lang

1  would simply answer the question and admit that he did what

2  was alleged he did in this case, the plaintiff would drop

3  the punitive damage case.  That same offer was made to

4  Defendant Welker, that if he, on the witness stand, would

5  now acknowledge he did the acts, which the jury found that

6  he did, and admitted that in open court, that the plaintiff

7  would drop the punitive damage case against Officer Welker

8  as well.

9       I would just like the record to reflect that at no

10 time prior to that being rejected by counsel for either

11 defendant was that communicated to the two defendants.

12 There is a duality of representation going on here for

13 counsel for the defendant who is representing not only these

14 two defendants but an insurance carrier.

15      The insurance carrier's position is they do not cover

16 punitive damage awards.  So, presumably, any punitive damage

17 award made against these defendants will be the sole

18 responsibility of the defendants and not the carrier.  And I

19 simply note that the defendants were not provided an

20 opportunity with respect to that offer, to weigh that offer

21 prior to it being rejected by counsel for the carrier.

22      THE COURT:  Okay.

23      MR. LEES:  That's all I wanted to put on the record.

24 Thank you so much.

25      THE COURT:  It's noted for the record.  Thank you.

```
 1          All right.  Court will be in recess until we either
 2   have a question or a verdict.  Thank you all.
 3               (A deliberation recess was taken.)
 4          THE COURT:  All right.  I understand that we have a
 5   verdict, so we're going to bring in the jury.
 6                    (Jury in at 10:40 a.m.)
 7          THE COURT:  All right.  You may be seated.
 8          Same foreperson I see.  Do we have a verdict?
 9          THE FOREPERSON:  Yes, ma'am, we do.
10          THE COURT:  Is it unanimous?
11          THE FOREPERSON:  Yes, ma'am.
12          THE COURT:  All right.  If you'll hand that to the
13   court security officer for me.
14          All right.  The verdict form appears to be in order.
15   If you'll publish it, please.
16          MS. POWELL:  United States District Court, Southern
17   District of Mississippi, Northern Division, Jimmy Anthony
18   versus Jonathon Welker and Jacob Lang, 3:23-CV-132-KHJ-MTP,
19   do you find the Defendant Jonathon Welker acted with malice
20   or reckless indifference to Plaintiff Jimmy Anthony's
21   rights?
22          Yes.
23          What amount, if any, do you award as punitive damages
24   against Defendant Jonathon Welker?
25          $7,500.
```

1    Do you find that Defendant Jacob Lang acted with

2  malice or reckless indifference to Plaintiff Jimmy Anthony's

3  rights?

4    Yes.

5    What amount, if any, do you award for punitive

6  damages against Defendant Jacob Lang?

7    $2,500.

8    THE COURT:  Is it signed and dated by the foreperson?

9    MS. POWELL:  Yes, ma'am.

10    THE COURT:  All right.  Thank you.

11    Does either side wish that I poll the jury?

12    MR. LEES:  No, Your Honor.

13    MR. SILER:  Not for the defense, Your Honor.

14    THE COURT:  I really do appreciate your attentiveness

15  to this case.  I'm going to have you retire to the jury

16  room.  I promise you there is not another phase of trial,

17  but I will be back there shortly.

18    I'm just going to meet with you briefly.  I just want

19  to talk to you about if we've been treating you right, if

20  the snacks were good, things like that.  So if you'll retire

21  to the jury room, I'll be back there in just a few minutes.

22    You may be dismissed.

23    MS. POWELL:  All rise.

24    THE COURT:  You can leave your notebooks in the

25  chairs.

```
1                    (Jury out at 10:42 a.m.)

2          THE COURT:  All right.  You may be seated.

3          All right.  Now that the jury has reached verdicts on

4     liability and on the punitive damages, this matter is

5     adjourned.

6          I'm going to come down off the bench and shake your

7     hands.  You all have done a great job.  I appreciate the

8     level of preparedness.  It was a tricky case.  We had a

9     number of evidentiary and legal issues, so I really do

10    appreciate attorneys for both sides and their assistance for

11    figuring those out.  But this matter is adjourned.

12         MS. POWELL:  All rise.

13    *************************************************************

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    **CERTIFICATE OF COURT REPORTER**

2

3          I, Candice S. Crane, Official Court Reporter for the

4    United States District Court for the Southern District of

5    Mississippi, do hereby certify that the above and foregoing

6    pages contain a full, true, and correct transcript of the

7    proceedings had in the forenamed case at the time and place

8    indicated, which proceedings were stenographically recorded

9    by me to the best of my skill and ability.

10         I further certify that the transcript fees and format

11   comply with those prescribed by the Court and Judicial

12   Conference of the United States.

13         THIS, the 7th day of June, 2025.

14

15              /s/ Candice S. Crane, RPR, RCR, CCR

16                    Candice S. Crane, RPR, RCR, CCR #1781
                      Official Court Reporter
17                    United States District Court
                      Candice_Crane@mssd.uscourts.gov
18

19

20

21

22

23

24

25