UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JIMMY ANTHONY                                                                          PLAINTIFF

V.                                         CIVIL ACTION NO. 3:23-CV-132-KHJ-MTP

JONATHON WELKER, et al.                                                              DEFENDANTS

ORDER

Before the Court is Plaintiff Jimmy Anthony's [149] Motion for New Trial on Damages. For the reasons stated below, the Court denies the motion.

I.   Background

This is a police brutality case. Anthony sued Defendants Jonathon Welker ("Welker") and Jacob Lang ("Lang")—who worked as police officers for the City of Pearl, Mississippi—under 42 U.S.C. § 1983 for beating him at the Pearl Police Department. Compl. [1] ¶¶ 7–12. At trial, Welker and Lang denied Anthony's allegations. Trial Tr. [152] at 132–33, 170, 200–02, 216–17.

But the jury didn't believe them. *See* Verdict Form [134]; Verdict Form [136] at 1. In withholding qualified immunity, the jury found that Lang beat Anthony's head into a wall and Welker repeatedly struck him, all while Anthony was neither resisting nor posing an immediate threat. *Compare* [134] at 1-2, *with* Trial Tr. [157] at 39–40.

The beating left Anthony hospitalized for five days with "fractured ribs, a mediastinal hematoma, and a hemothorax, as well as a scalp hematoma." Mem.

Supp. Mot. New Trial [150] at 1; *accord* [152] at 68–69, 72, 74, 105. Afterward, Anthony experienced persistent, though improving, shortness of breath. [152] at 77. Even so, he could still perform some physical activity during his convalescence, like helping to paint a house and repair floor joists. Trial Tr. [151] at 101–02.

The jury awarded Anthony $80,000 in compensatory damages for his injuries, pain and suffering, loss of enjoyment of life, and mental anguish. *See* Final J. [138] at 1; [157] at 43–44.[1] It also awarded him $10,000 in punitive damages. [138] at 1.

Anthony now moves for a new trial on damages based on (1) admitted evidence of prior bad acts and (2) improper remarks by defense counsel during closing arguments. [150] at 3, 6. The Court denies Anthony's motion.

II.   Standard

A court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). For example, "[a] court may grant a new trial when there is an erroneous evidentiary ruling at trial" that affects a party's substantial rights. *Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 417 (5th Cir. 2020); *see Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 508 (5th Cir. 2012) (citing Fed. R. Civ. P. 61). A new trial may also be warranted where "improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions." *Heckman v. Gonzalez-Caballero*, 65 F.4th 222, 226 (5th Cir.

---

[1] Anthony did not seek damages for medical bills or lost wages, and he did not ask the jury for a specific dollar amount of damages. [157] at 43, 60.

2023) (citation modified). In Anthony's view, both of these things happened at his trial, and he wants another chance to make his case to a jury.

III.   Analysis

Anthony asks for a new trial because he says the Court admitted potentially prejudicial evidence and defense counsel made improper remarks during closing argument. *See* [150] at 3–7. But there are at least two problems with Anthony's arguments. First, he waived his objections to the evidence he now challenges. Second, he failed to object to defense counsel's remarks. So the Court denies Anthony's [149] Motion because it did not plainly err in admitting the evidence, and the improper remarks did not affect Anthony's substantial rights.

   A.   Admission of Evidence

Anthony first asks for a new trial because "certain prejudicial evidence . . . of alleged prior bad acts"—including "alleged acts of violence by [Anthony] against his girlfriend, Brandis Quick"—was admitted despite his [106] Motion in Limine. *Id.* at 3; *see also* Mem. Supp. Mot. in Limine [110] at 4–9, 11–12; *Anthony v. Welker*, No. 3:23-CV-132, 2025 WL 863639, at *4–5, *7 (S.D. Miss. Mar. 19, 2025). While Anthony moved to exclude this evidence in limine, he waived his objections to it at trial. *See United States v. Iglehart*, 687 F. App'x 333, 336 (5th Cir. 2017) (per curiam); *Blessey Marine Servs., Inc. v. Jeffboat, L.L.C.*, 771 F.3d 894, 899 (5th Cir. 2014). So the Court declines to consider this unpreserved issue on the merits. *See Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1087–88 (5th Cir. 1996); *see also Garriott v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011). The Court finds further that it

3

did not plainly err in admitting the evidence. *See SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 783 (5th Cir. 2017).

    1. Waiver

Anthony claims first that he deserves a new trial because the Court admitted prejudicial evidence against him at his first trial. [150] at 3. As explained below, Anthony has waived these objections.

Before trial, Anthony filed his [106] Motion in Limine challenging evidence of (1) "prior arrests, prior calls, prior investigations, or the fact that [he] was known to Pearl officers"; (2) "specific bad acts before the two-day period at issue"; (3) "specific bad acts during the two-day period at issue"; and (4) portions of the body camera footage from his arrest. *Anthony*, 2025 WL 863639, at *4–7 (citation modified). In its [116] Order, the Court deferred ruling on the admissibility of the bad-acts evidence. *Id.* at *4. And the Court noted that "on objection, [it would] exclude bad-acts evidence whose probative value does not justify receiving it into evidence." *Id.* As for the body camera footage, the Court definitively ruled that it would "exercise its discretion to admit any portion of the video that the parties wish to play." *Id.* at *5, *7. Even so, it offered to "issue an appropriate limiting instruction upon request." *Id.* After the Court's in limine ruling (but before trial), Anthony agreed to offer the contested body camera footage in a joint exhibit. *See* Orig. Pretrial Order [124] at 9; [151] at 5.

The question then is whether Anthony's pretrial motion in limine preserved his right to seek a new trial now. In the Court's view, it did not. A pretrial motion in

4

limine may preserve error. *United States v. Lara*, 23 F.4th 459, 473–74 (5th Cir. 2022) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 & n.16 (5th Cir. 2002)). But it does so only "once the court rules *definitively* on the record . . . ." Fed. R. Evid. 103(b) (emphasis added); *see also Iglehart*, 687 F. App'x at 336. If a court makes an in limine ruling but also affirms that it will "reconsider the objection at the time of the offer," it has not ruled definitively. *Iglehart*, 687 F. App'x at 337. Likewise, a party that introduces evidence it tried to exclude before trial "waive[s] its right to appeal the . . . denial of its motion *in limine* . . . ." *Blessey Marine Servs.*, 771 F.3d at 900.

The Court did not definitively rule in limine on the admissibility of the bad-acts evidence. *See Anthony*, 2025 WL 863639, at *4. So Anthony had to object during trial. *See Iglehart*, 687 F. App'x at 336–37. He did so only once, and the Court sustained his objection. [151] at 89–91. Otherwise, he waived his objections. *See Iglehart*, 687 F. App'x at 336–37.

As to the body camera footage, the Court definitively ruled that it was admissible. *See Anthony*, 2025 WL 863639, at *5, *7. And Anthony waived his objection when he changed tack and agreed to play the footage for the jury as a joint exhibit. *See Blessey Marine Servs.*, 771 F.3d at 899–900; *see also Ruiz v. Wing*, 991 F.3d 1130, 1140 (11th Cir. 2021) (holding that Section 1983 plaintiff waived objection to video showing plaintiff's prior bad acts "by preemptively agreeing to play the video at the outset of the trial as a joint exhibit . . . .").

5

Because Anthony waived his objections to this evidence during trial, he may not rely on those objections to seek a new trial now.

2. Plain-Error Review

Even if Anthony's waiver was excusable, the Court would still deny Anthony's [149] Motion because the Court finds no plain error in its evidentiary rulings.

Courts have "discretion to consider new [arguments] raised for the first time in a post-trial brief . . . ." *Quest Med.*, 90 F.3d at 1087. But they do "not look with favor upon tardy arguments that are brought to [their] attention post-trial after counsel has had the opportunity to salvage what he may from the record." *Id.* at 1088 (citation modified). So plain-error review applies to unpreserved challenges in civil cases. *Life Partners Holdings*, 854 F.3d at 783; *see also Johnson v. Watkins*, 803 F. Supp. 2d 561, 582, 588–90 (S.D. Miss. 2011) (applying plain-error standard in deciding a motion for new trial), *aff'd*, 472 F. App'x 330 (5th Cir. 2012) (per curiam).

"To satisfy the plain-error standard, [parties] must show that (1) there was error; (2) the error was clear and obvious; (3) the error affected their substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Life Partners Holdings*, 854 F.3d at 783. An error affects substantial rights if there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *IberiaBank v. Broussard*, 907 F.3d 826, 838 (5th Cir. 2018) (citation modified); *see also Harris v. FedEx Corp.*

6

*Servs., Inc.*, 92 F.4th 286, 303 (5th Cir.), *cert. denied*, 145 S. Ct. 168 (2024) ("If the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict, then a party's substantial rights have not been affected." (citation modified)).

Since Anthony waived his objections, the Court considers only whether it plainly erred by permitting Welker and Lang to admit the bad-acts evidence and body camera footage. *See Johnson*, 803 F. Supp. 2d at 582, 588–90. It did not. To start, Anthony does not directly argue that the Court erred by admitting the evidence to establish "credibility, bias, and context." [150] at 7. Instead, he contends that "once th[e] evidence was admitted," defense counsel "seized upon it . . . to sully [his] character" during closing arguments *Id.* at 5, 7–8. But Anthony did not request a limiting instruction or object that Welker and Lang were using the evidence for an improper purpose. *Cf. Lara*, 23 F.4th at 474–75 (requiring contemporaneous objection to put court on notice that other party violated in limine ruling). So the Court did not err in deferring its evidentiary rulings or in admitting the evidence for the reasons stated in its [116] Order. *See Anthony*, 2025 WL 863639, at *4–7.

Even if the Court erred, the error was not obvious. Anthony highlights the body camera footage's prejudicial effect. *See* Reply [166] at 2. But the Court noted the close balance between its probative value and prejudicial effect. *See Anthony*, 2025 WL 863639, at *5 ("After reviewing the video many times, the Court cannot say that the danger of unfair prejudice substantially outweighs the probative value

7

discussed above." (citation modified)). Given the closeness of the issue, any error in admitting the footage was not obvious.

What's more, admitting the contested evidence did not affect Anthony's substantial rights. The jury found for Anthony and awarded him $80,000 in compensatory damages and $10,000 in punitive damages. *See* [138] at 1; [157] at 43–44. While Anthony insists that this award "is palpably and grossly inadequate considering" his injuries, [150] at 4, the Court disagrees. "[P]ain and suffering is, to a large degree, not susceptible to monetary quantification, and the jury thus necessarily has especially broad leeway" in awarding damages. *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1427 (5th Cir. 1988) (per curiam). For this reason, courts give "deference [to] damage awards based on intangible harm." *Le v. United States*, 138 F.4th 264, 278 (5th Cir. 2025) (citation modified).

As the jury found, Anthony suffered serious and unjustifiable injuries. *Compare* [157] at 39–41, *with* [134], *and* [136]. He spent five days in the hospital suffering from "fractured ribs, a mediastinal hematoma, and a hemothorax, as well as a scalp hematoma." [150] at 1; *accord* [152] at 68–69, 72, 74, 105. And the injuries left him with persistent but improving shortness of breath. [152] at 77.

Considering Anthony's injuries, however, the Court cannot infer prejudice from the jury's $80,000 award. *See Munn*, 924 F.2d at 578. In *Munn*, the plaintiff's wife suffered "multiple rib and pelvic fractures, a lacerated chest artery, and a retroperitoneal hematoma" from a car accident; she refused a blood transfusion based on her religious beliefs and died about eight hours after the accident. *Id.* at

8

571, 573. The jury awarded $10,000 for her eight hours of pain and suffering. *Id.* at 578.[2] There, the Fifth Circuit held that "[a]lthough the court did admit potentially prejudicial testimony into evidence" about the decedent's religious beliefs, the jury's $10,000 award showed that it was not improperly biased. *Id.; see also id.* at 573.

Anthony's injuries appear comparable to those in *Munn*. And the jury awarded higher damages to Anthony than those awarded in *Munn* because his pain and suffering, loss of enjoyment of life, and mental anguish lasted longer than eight hours. Even so, Anthony still had enough mobility to help with painting a house and repairing floor joists in the three-month period after his hospitalization. [151] at 101–02. Considering the award in *Munn*, the jury's award here "is not so inadequate as to shock the judicial conscience." *Munn*, 924 F.2d at 578. Anthony does not suffer from "continuing, excruciating pain." *Osburn v. Anchor Lab'ys, Inc.*, 825 F.2d 908, 920 (5th Cir. 1987). Nor did his injuries leave him with a lifelong, debilitating condition like epilepsy or psychosis. *See Hall v. Freese*, 735 F.2d 956, 958–59 (5th Cir. 1984). And he did not suffer treatment complications, limb amputations, or suicidal ideation. *See Le*, 138 F.4th at 271–72. On this record, the Court cannot say that the jury refused to make Anthony whole or that it would have awarded higher damages absent the potentially prejudicial evidence. *See IberiaBank*, 907 F.3d at 838.

---

[2] That equates to nearly $24,000 today. *CPI Inflation Calculator*, U.S. Bureau of Lab. Stats., https://www.bls.gov/data/inflation_calculator.htm [https://perma.cc/7CGM-UJZ2] (last visited Aug. 5, 2025).

As for the jury's punitive damages award, "punitive damages are never available as a matter of right, no matter how egregious the defendant's conduct may be." *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) (citation modified). So "[t]he decision to award or deny punitive damages is left to the finder of fact." *Id.* That the jury awarded Anthony punitive damages when it could have awarded him none speaks to how it viewed the reprehensibility of Welker and Lang's conduct. As a result, the Court cannot infer prejudice from the jury's $10,000 punitive damages award.

In sum, the jury's $90,000 award shows that Anthony overcame any prejudice that may have resulted from introducing the bad-acts evidence or body camera footage.

B. Improper Arguments

Anthony next asks for a new trial because defense counsel made remarks in closing argument intended "to prejudice the jury against [Anthony] in order to keep the jury from following the Court's instruction to fully compensate [him] for the injuries he proved." [150] at 6. While the Court agrees that defense counsel's comments were inappropriate, those comments do not entitle Anthony to a new trial on damages.

The defense strategy was to characterize Anthony as a dishonest freeloader,[3] drug addict,[4] and domestic abuser[5] who did not deserve compensation for his injuries because of his past bad choices.[6] Defense counsel's remarks were "serious and unfair," and they "ha[d] no place in a federal court." *Hall*, 735 F.2d at 960. But Anthony's counsel never objected. And "it was not the duty of the [Court] to step into the trial on the basis of these remarks, while [Anthony's] counsel sat idly by." *Hall*, 735 F.2d at 961; *see also Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988) (barring plaintiff who failed to object during closing

---

[3] *See* [157] at 67 ("[I]f you sit around for three years and try to come up with a story about how you can come to the jury and make some money with it . . . ."); *id.* at 68 ("The point is how he's chosen to live his life and how to do things. He doesn't work. He has no income. He's convinced Ms. Quick somehow or another to let him live in her house for several years without paying anything. He doesn't have any income. He lives off of her Social Security check."); *id.* at 76 ("[L]et me suggest this to you. This is a money grab. It is a money grab. He is coming in here to the courthouse casino, putting a quarter in the slot machine, pulling—pulling the lever, and seeing if he can get eight people to agree to give him some money for which they have no basis.").

[4] *See* [157] at 77 ("Look, Mr. Anthony's made a lot of bad decisions. . . . And I know that [addicts], you know, are looking for their next—next hit, their next drink, their next whatever they can find, and they won't tell you the truth if they need to try to get around to it. And it may be that that's just a sickness and there's no way to deal with it, but you know how it works. He is not a truthful person . . . .").

[5] *See* [157] at 69 ("In this case, the least of us is probably Brandis Quick. . . . We go out there every time she calls, calls about him, and—and every time she calls about him, he runs and leaves before the police can get there."); *id.* ("I know the most dramatic words I've heard in this case came from the video that Officer Saucier said in talking to Ms. Quick . . . . How this ends is you dying, because he's going to kill you. And then remember he got her to show to the camera, you know, the scars where he'd hit her on the side of the neck.").

[6] *See* [157] at 68 ("He's exercised his rights to make choices about his life, choices about the people that are around him, and a lot of them have been bad choices. . . . [T]he police in Pearl are out at his house all the time because his girlfriend calls . . . ."); *id.* ("[W]e've got to live with the consequences of those decisions and choices, and he's—that's what Mr. Anthony is dealing with at the moment."); *id.* at 79 ("Let's not enable Mr. Anthony here to continue making bad choices, to continue dealing with Ms. Quick, the least of us, the way he always has, because if we give him a lot of money, that's exactly what's going to happen.").

11

argument "from urging the improper arguments as grounds for a new trial after the jury had returned its verdict." (citation modified)).

Given Anthony's counsel's failure to object, a new trial would be appropriate only if defense counsel's remarks affected Anthony's "substantial rights". *See Clapper v. Am. Realty Invs., Inc.*, 95 F.4th 309, 316 n.2 (5th Cir. 2024) (per curiam); *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 778 (5th Cir. 2009). The facts do not support this conclusion. In the Court's view, the defense's improper arguments did not seriously prejudice Anthony's right to a fair trial or otherwise affect his substantial rights. *See also supra* Section III.A.2. As noted above, the jury had broad leeway in awarding damages. *Simeon*, 852 F.2d at 1427. Anthony did not suffer permanent injuries. *See* [151] at 101–02. He did not quantify his damages for the jury. [157] at 60. The Court instructed the jury to "not be swayed by sympathy, bias, prejudice, or favor as to either party." *Id.* at 29. And the jury's award roughly aligns with an award approved by the Fifth Circuit for analogous injuries. *See Munn*, 924 F.2d at 571, 578. These facts show that the jury saw through defense counsel's improper tactics. As a result, the Court cannot conclude that the jury disobeyed its instructions. *See Baisden*, 693 F.3d at 507 ("Juries are presumed to follow their instructions." (citation modified)). And despite defense counsel's improper arguments, the Court is not "convinced that the jury verdict is inconsistent with substantial justice . . . ." *Hall*, 735 F.2d at 962.

IV. Conclusion

For the reasons stated above, the Court DENIES Anthony's [149] Motion for New Trial on Damages. In doing so, the Court has considered all the arguments raised. Those arguments not addressed would not have altered the Court's decision.

SO ORDERED, this 12th day of September, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
