UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JIMMY ANTHONY                                                    PLAINTIFF

V.                              CIVIL ACTION NO. 3:23-CV-132-KHJ-MTP

JONATHON WELKER, et al.                                         DEFENDANTS

ORDER

Before the Court are Defendant City of Pearl's ("the City") [140] Motion for

Attorneys' Fees and Plaintiff Jimmy Anthony's ("Anthony") [145] Motion for

Attorneys' Fees, Costs, and Expenses. For the reasons stated below, the Court

denies the City's [140] Motion and grants in part and denies in part Anthony's [145]

Motion.

I.      Background

This is a police brutality case. Anthony sued Defendants Jonathon Welker

("Welker") and Jacob Lang ("Lang")—who worked as police officers for the City—

under 42 U.S.C. § 1983 for beating him at the Pearl Police Department. Compl. [1]

¶¶ 7–12. Anthony sued the City too. He alleged, among other things, that the City

was negligent in hiring, training, and supervising Welker and Lang. *Id.* ¶¶ 23–25.

Before trial, the City moved for summary judgment, Anthony conceded his claims,

and the Court granted the motion, concluding the City's involvement in the case.

Mot. [96]; Resp. [99] at 2; [100] Order.

The case went to trial against Welker and Lang. After a four-day trial, the jury returned a verdict in Anthony's favor and awarded him $80,000 in compensatory damages and $10,000 in punitive damages. *See* Final J. [138] at 1; Trial Tr. [157] at 43–44.

Now Anthony seeks his attorneys' fees from Welker and Lang, and the City seeks its attorneys' fees from Anthony. *See* [140]; [145].

II.    Standard

Under 42 U.S.C. § 1988(b), "a court in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs for proceedings in vindication of civil rights." *Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001) (citation modified). But "[t]he standard for awarding attorney's fees differs if a defendant rather than a plaintiff prevails." *Id.* at 508 (citation modified). "[A] prevailing plaintiff in a civil rights action is presumptively entitled to reasonable attorney's fees, unless a showing of special circumstances is made that would deem such an award unjust." *Id.* (citation modified).[1]

By contrast, "[a] district court may award attorney's fees to a prevailing civil rights defendant only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.* (citation modified). "Thus, attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made

_____

[1] "When a plaintiff succeeds in remedying a civil rights violation, . . . he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority. He therefore should ordinarily recover an attorney's fee from . . . the party whose misconduct created the need for legal action." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (citation modified).

that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit." *Id.*

III.    The City's [140] Motion

The Court denies the City's [140] Motion because Anthony's claims were not "vexatious, frivolous, or otherwise without merit." *Id.*

The City requests attorneys' fees from Anthony saying it never should have been a defendant and "certainly should not have been forced to defend itself through summary judgment." Mem. Supp. Mot. [141] at 1. On that basis, the City seeks reimbursement for the "substantial expense" it incurred preparing its [96] Motion. *Id.* But this rationale does not justify awarding attorneys' fees.

First, a "plaintiff's ultimate failure to prevail does not automatically establish that 'the action must have been unreasonable or without foundation' thereby warranting an award of attorney's fees." *Dean*, 240 F.3d at 511 (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). Rather, the Court only awards attorneys' fees "to protect defendants from burdensome litigation having no legal or factual basis." *Christiansburg*, 434 U.S. at 420.

At minimum, Anthony's claims against the City for direct liability under Section 1983 had some factual basis. *See* [1] ¶¶ 4–25; [99] at 1–2; Hudson Depo. [99-1] at 2–3; Interrogs. [99-2] at 2; Mem. Opp'n Mot. [143] at 1–2. As Anthony notes, certain surveillance cameras and microphones within the booking area and holding area were not operational when Welker and Lang assaulted Anthony, and the assault "just happened to occur within the area not covered by the non-operational

3

equipment." [99] at 2. Furthermore, Lieutenant Billy Hudson acknowledged he "may have made a mistake" in omitting details of Anthony's injuries from his investigative report. [99-1] at 3. Together with Anthony's successful claims against both Welker and Lang, the Court cannot say Anthony's claims against the City were "frivolous, unreasonable, or groundless." *Christiansburg*, 434 U.S. at 421. So awarding attorneys' fees is unwarranted.

Besides, Anthony voluntarily conceded the [96] Motion for Summary Judgment. *See* [99] at 2. Relinquishing his claim against the City in this way resembles voluntarily dismissing it under Federal Rule of Civil Procedure 41(a). In *Dean,* the Fifth Circuit held that "absent any ruling on the merits of the claim by summary judgment or trial, a defendant is not a [Section] 1988 prevailing party when the plaintiff voluntarily dismisses his claim." 240 F.3d at 508.[2] As the Court explained, a claim may appear "meritorious at the onset," but "during the unpredictable course of litigation," while analyzing "insurmountable problems of proof," plaintiffs may choose to withdraw their claims. *Id.* at 510.

Anthony argues as much. In his [99] Response to the City's [96] Motion, Anthony highlights "the stringent legal standard" to establish the City's direct liability under 42 U.S.C. § 1983. [99] at 2. He explains that discovery on this claim was both necessary to reveal or refute "a pattern of similar violations generally required to carry liability against a municipality. . . ." *Id.* Ultimately that discovery

---

[2] And according to the statute, a party is not entitled to attorneys' fees if they are not "prevailing." 42 U.S.C. § 1988(b).

led Anthony to renounce his claim against the City "in the interest of judicial expediency and candor." *Id.*

Therefore, the Court denies the City's [140] Motion.

IV.   Anthony's [145] Motion

Turning to Anthony's request for attorneys' fees from Welker and Lang, the Court grants in part and denies in part Anthony's [145] Motion.

The Court already determined that Anthony is a prevailing party under 42 U.S.C. § 1988(b). *See* [138] ("[Anthony] is entitled to costs allowable under 28 U.S.C. § 1920 and reasonable attorneys' fees under 42 U.S.C. § 1988(b)). Citing the [138] Order, Anthony asks the Court to award him $182,535.00 in attorneys' fees and $22,203.36 in costs and expenses.

The next question is whether the fee Anthony requests is reasonable. "An attorney's fee award rests within the sound discretion of the district court . . . ." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). And "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Ducksworth v. City of Laurel*, No. 2:20-CV-114, 2024 WL 477014, at *2 (S.D. Miss. Feb. 7, 2024) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This is known as the lodestar method. *Id.* While making this calculation, "the [C]ourt should exclude all time that is excessive, duplicative, or inadequately documented." *Combs*, 829 F.3d at 392 (citation modified).

The Court begins by calculating the lodestar.

A.  Calculation of Hours

"[T]he first step in determining reasonable attorneys' fees is an evaluation of the number of hours reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1994) (per curiam) (citation modified). "Parties submitting fee requests are required to exercise billing judgment, which refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *McMillian v. Aberdeen Sch. Dist.*, No. 1:22-CV-117, 2025 WL 611070, at *2 (N.D. Miss. Feb. 25, 2025) (citation modified).

Anthony's counsel submitted an [145-4] Hourly Billing Record showing the tasks performed, by whom they were performed, the date they were performed, the time expended on each task, and the total rate charged. *See* [145-4]. Welker and Lang challenge multiple entries, which the Court addresses, in turn, below.

1.  Unsuccessful Claim

Welker and Lang first argue that Anthony's attorneys' fees should be reduced to account for time spent litigating Anthony's claims against the City. Mem. Opp'n Mot. [163] at 7 ("Defendants propose a reduction of 1/3 of the fees prior to the [100] [O]rder dismissing the City to accommodate for that time spent on those claims."); *see also id.* at 6. But Anthony's claims against the City were intertwined with his claims against Welker and Lang. As a result, his attorneys' [145-4] Hourly Billing Record "makes no distinction between the hours worked on each claim." *McMillian*, 2025 WL 611070, at *3. These claims cannot be disentangled. So the Court declines

6

to reduce the fee award because of the hours spent on Anthony's claims against the City.[3]

### 2. Pre-Litigation Work

Second, Welker and Lang argue that much of the pre-suit work Anthony's counsel reports "looks to be redundant," so those time entries "should not be allowed as duplicative." [163] at 7. Specifically, Welker and Lang dispute entries on 5/3/2022, 5/4/2022, 5/9/2022, 5/11/2022, 5/25/2022, 6/6/2022, 6/23/2022, 6/28/2022, 6/30/2022, 7/7/2022, and 2/14/2023. *Id.* Anthony responds that each entry "signifies a specific, distinct task that was performed in furtherance of the claim," and while "[t]here may be entries that are in furtherance of the same goal," "[t]here are no duplicative entries." Reply [165] at 4–5.

The Court may reduce the number of hours awarded if the documentation is duplicative. *Combs*, 829 F.3d at 392 (citation modified). Reviewing the [145-4] Record, the Court finds the first two entries on 5/3/2022 are strikingly similar in both description and length of time. *See* [145-4] at 1.[4] The Court declines to award both, so it reduces the total award by 0.3 hours at Flechas's rate of $400 per hour for a total reduction of $120.00.

Welker and Lang also claim the 0.8 hours Anthony's counsel spent researching the validity of "John Doe Defendants" was "unnecessary to the

---

[3] But Anthony's degree of success is relevant to the Court's analysis when considering whether to adjust the lodestar based on the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See infra* Section IV,E.

[4] The remaining contested time entries do not contain nearly identical entries on the same day.

litigation" because no "John Doe" defendants were ever named in the [1] Complaint. [163] at 7. Anthony responds that the research "was conducted to determine whether filing against John Doe defendants in the absence of the identity of the officers was a viable option." [165] at 5. In the Court's view, this argument does not warrant an adjustment to the total award.

### 3. Clerical Work

Next, Welker and Lang contest any "clerical work" performed by attorneys. *Id.* at 11–12. They argue that any clerical or administrative work performed by an attorney is not compensable and should be reduced or excluded. *Id.* Anthony counters by explaining that his counsel "exercised the judgment not to bill for paralegal time," found it "absolutely necessary . . . to review things that ha[d his] name on [it]," and mindfully differentiated what he could assign to paralegals, while retaining the "attorney work" for himself. [165] at 7–9. Thus, Anthony argues that reviewing paralegals' work and assigning tasks are appropriate "attorney work." *Id.* at 7. Welker and Lang submit three pages of Anthony's counsel's time entries, which they argue are "clerical work." *See* [163] at 8–11.

"Clerical work . . . should be compensated at a different rate from legal work." *Walker v. U.S. Dept. of HUD*, 99 F.3d 761, 770 (5th Cir. 1996).[5] Clerical work includes tasks such as the "filing of legal documents, the calendaring of events, and

---

[5] The distinction between legal work and clerical work is appropriate because "non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Missouri v. Jenkins*, 491 U.S. 274, 288, n.10 (1989).

communications regarding scheduling issues." *Bowman v. Prida Constr., Inc.*, 568 F. Supp. 3d 779, 787 (S.D. Tex. 2021) (citation modified).

Anthony concedes that "should the Court find that [his counsel] entered a clerical task on the billing sheet, [he] would ask the Court award that time at 50% of the attorney's hourly rate." [165] at 7 n.9. Accepting this concession, the Court finds that eight contested entries are clerical work and reduces the award by $160.00.[6]

4. "Focus Groups"

Fourth, Welker and Lang argue that fees in connection with Anthony's counsels' use of focus groups are unreasonable. [163] at 12–13. Anthony responds that the use of focus groups was both "necessary and reasonable" to prepare for trial. [165] at 9.[7]

---

[6] This amount was calculated by charging the following eight entries, *see* [145-4], at $200.00 per hour, which is 50% of Flechas's typical rate of $400.00 per hour:

| Date | Time | Description |
| --- | --- | --- |
| 8/7/2023 | .1 | Email exchange with OC Bland re deposition dates |
| 12/5/2023 | .1 | Email exchange OC Bland re potential deposition dates |
| 1/12/2024 | .1 | Email exchange OC Bland re expert deadline/depo schedule |
| 2/6/2024 | .1 | Email exchange OC Bland re deposition dates |
| 2/28/2024 | .1 | Email exchange OC Bland re schedule deposition of [Anthony] |
| 3/21/2024 | .1 | Email exchange re setting settlement conference |
| 3/31/2025 | .1 | Email exchange Court IT re testing equipment |
| 4/11/2025 | .1 | Email exchange Court IT re equipment upgrade/testing |

[7] Anthony points out that his counsel chose to conduct the focus groups themselves rather than hire outside consultants. *See* [165] at 10 n.14.

9

The Court agrees with Anthony. Based on the length of litigation and the complexity of the law involved,[8] the Court will not label this case as "relatively simple" and discard all the focus group fees. *Cf. Axel v. Griffin*, No.12-1019, 2014 WL 896727, at *2 (D. Minn. Mar. 6, 2014) (finding a focus group unnecessary in trial preparation because the case was "relatively simple"); *see also* [163] at 12. Without much Fifth Circuit caselaw on this issue, both sides cite *Dunigan v. Miss. Valley St. Univ.*, No. 4:19-CV-33, 2021 WL 4392132, at *5 (N.D. Miss. Sept. 24, 2021). And *Dunigan* is distinguishable from this case in three ways. First, the *Dunigan* court found the case "was not so complex as to warrant" the number of hours expended on focus groups, so the Court reduced the award. *Id.* Second, this case went to trial; *Dunigan* did not. *Id.* Third, Anthony is seeking less than half of the number of hours requested by counsel in *Dunigan. Id.*; [165] at 10. The focus groups were reasonable to provide Anthony with effective representation.

But the Court will reduce the focus group hours in two ways. First, on October 1, 2024, Flechas billed 8 hours for both focus groups. [145-4] at 14. But Lees billed 10 hours. *See id.* at 26. The Court will allow counsel to bill 8 hours each for conducting the focus groups. Therefore, the Court reduces the fee award by $1,000.00—an amount equal to 2 hours at Lees's rate. Second, the Court reduces the award for the time spent scheduling the focus groups because scheduling is

---

[8] The work on this case began in May 2022. [145-4] at 1. This three-year course of litigation has included multiple defendants, extensive discovery, significant motion practice, multiple extensions and delays, complex legal issues such as Section 1983 liability and qualified immunity, and ultimately, a four-day trial.

clerical work. The Court reduces the fee award for scheduling by 50%, equaling $95.00. *See id.* at 13, 26.[9]

5. Post-Trial Motions

Welker and Lang next turn to Anthony's fee request for post-trial motions. [163] at 13. They argue Anthony cannot recover attorneys' fees for time spent on the [149] Motion for New Trial or the City's [140] Motion for Attorneys' Fees. *Id.* Anthony responds that "[t]ime spent on post-trial attorney work is appropriately compensable" and insists his [149] Motion was made in furtherance of his successful claims. [165] at 13.

The Court grants Anthony the fees associated with the [149] Motion for New Trial. Regardless of the outcome of the [149] Motion, the Court nevertheless finds it was filed in good faith and awarding fees is appropriate. *Jolie v. Nick's Mgmt., Inc.,* No. 3:23-CV-481, 2024 WL 5301769, at *9 (N.D. Tex. Nov. 5, 2024) (citation modified) ("Where a plaintiff prevails in a lawsuit, attorney's fees are properly awarded even from Plaintiff's unsuccessful motions practice.*"); Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at *9 (E.D. Tex. May 12, 2016) (explaining that plaintiff's attorneys are entitled to fees for unsuccessful motions filed in good faith because plaintiff's ultimate claim was successful).

---

[9] There are two scheduling entries: 8/27/2024 (Flechas) – Email exchange co counsel re scheduling focus groups (0.1 - $40.00) and 9/20/2024 (Lees) – Scheduling of focus groups (0.3 - $150.00). [145-4] at 13. Added together, the scheduling entries equal $190.00. Half of $190.00 is $95.00.

But the Court declines to award fees for the [140] Motion because Anthony did not prevail in his claims against the City. So the Court reduces the total award by 5.7 hours, at Flechas's rate, equaling $2,280.00. *See* [145-4] at 24.

### 6.  Duplicative, Vague, or Excessive Time Entries

Finally, Welker and Lang allege many of Anthony's counsels' time entries were "duplicative, excessive, or vague," and "should not be reimbursed." [163] at 14. They identify four types of entries that should be excluded from the fee award: (1) correspondence with Anthony's expert, (2) almost 25 hours spent on "many" unsuccessful motions in limine, (3) a "vague" entry on the day before trial, and (4) needless correspondence with Jason Dare. *Id.* The Court disagrees as to the first three examples but reduces the fee for the fourth.

The Court rejects Welker and Lang's attempt to exclude fees associated with correspondence between Anthony's counsel and Michael Primeau ("Primeau"). *Id.* Primeau is the expert Anthony hired to synchronize video and audio footage into a trial exhibit and to prepare an expert report as to the video's authenticity. [165] at 5. Anthony maintains these were "necessary" expenses and suggests he tried—unsuccessfully—to reduce these expenses by asking defense counsel to stipulate to the video's authenticity. [165] at 5–6. The Court has discretion to include expert fees as part of an attorney's fee award. *See* 42 U.S.C. § 1988(c); *Morrow v. Ingram*, No. 1:70-CV-4716, 2011 WL 815105, at *1 (S.D. Miss. 2011). Under this discretion, the Court awards the fees associated with Primeau.

The Court also rejects Welker and Lang's request to exclude the time Anthony's attorneys spent on the [106] Motions in Limine. Welker and Lang argue this time should be excluded because the [106] Motions were unnecessary and unsuccessful. [163] at 14. The Court disagrees. As already explained, a motion need not be successful to qualify for attorneys' fees. *See Jolie*, 2024 WL 5301769, at *9. Since Anthony ultimately prevailed in this case, he is entitled to attorneys' fees for all non-frivolous motions. *Id*. The Court cannot say Anthony's motions in limine were frivolous. Accordingly, the Court awards the fees associated with Anthony's [106] Motions in Limine.

Welker and Lang's challenge to the "vague entry" on April 21, 2025 also fails. *See* [163] at 14; [145-4] at 22. Anthony explains that this entry is not vague; it simply contains a typo. [165] at 6. He says the entry should correctly read: "review of all exhibits *for* court, stand, evidence." *Id*. Anthony also highlights this Court's instruction that three copies of all organized exhibits are required for trial—one for the Court, one for the witness stand, and one to be entered into evidence. *Id*. at 7. With this instruction in mind, he claims this 2.5-hour entry accounts for time spent ensuring the exhibits were "orderly and entered seamlessly at trial." *Id*. Acknowledging counsel's efficiency with the quantity and quality of trial exhibits, the Court awards this fee.

As to Welker and Lang's fourth example—communication with Jason Dare—the Court reduces the fee award by $80.00. Jason Dare is the counsel for Rankin County Jail, who is not a party in this case. [163] at 14. Welker and Lang wish to

exclude the time Anthony's attorneys spent communicating with Dare about having a records custodian authenticate certain records at trial. [163] at 14. Welker and Lang claim the custodian was unnecessary because the parties had consented to the records' authenticity. The Court agrees. In the [124] Pretrial Order docketed on April 15, 2025, Welker and Lang conceded the authenticity of all Rankin County Jail records. *See* [124] at 7. As a result, communications with Dare after entry of this order were unnecessary. And Anthony does not address this issue in his [165] Reply. Accordingly, the Court reduces the award by 0.2 hours, at Flechas's rate of $400 per hour, for a total reduction of $80.

*    *    *

In sum, the Court reduces the total fee award in three ways. First, the Court subtracts two hours from Lees's entries. *See infra* p. 10. Second, the Court subtracts 6.2 hours from Flechas's entries. *See infra* pp. 7, 12, 14. Third, the Court classifies .9 hours of Flechas's work as clerical, and .3 hours of Lees's work as clerical, and multiplies those hours at 50% of their rates accordingly. *See infra* notes 6, 9.

### B.  Hourly Rates

"The second step of the lodestar analysis is to determine a reasonable hourly rate for each attorney." *McMillian*, 2025 WL 611070, at *4.

"Hourly rates should be computed according to the prevailing market rates in the relevant legal market." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 380 (5th Cir. 2011) (citation modified). And "[i]t is [Anthony's] burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the relevant

14

community for similar services by lawyers of reasonable comparable skill, experience and reputation." *McMillian*, 2025 WL 611070, at *4 (citation modified). "The Fifth Circuit has instructed that the reasonable rate is usually established by affidavits of other attorneys practicing in the district." *Sales v. Bailey*, No. 2:12-CV-56, 2015 WL 1825060, at *2 (N.D. Miss. Apr. 22, 2015) (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)).

Anthony proposes hourly rates of $400 for Flechas and $500 for Lees, but Welker and Lang say these rates are unreasonably high. Mem. Supp. Mot. [146] at 2; *see* [163] at 1, 4–5.

To support his proposed rates, Anthony attaches [145-1, 145-2] Declarations from Flechas and Lees. Lees has practiced law for 48 years in both state and federal court. Lees Decl. [145-2]. He has "litigated in excess of four hundred . . . jury trials to verdict" in over a dozen states. *Id.* And he has represented clients on both sides of the "v." in criminal and civil matters. *Id.* Meanwhile, Flechas has practiced law for 19 years in both state and federal court. Flechas Decl. [145-1]. He handles "complex civil rights cases," has tried multiple cases to verdict, and claims "[t]here has been hardly any time in the last 16 years when [he] was not the primary attorney on multiple civil rights cases at one time." *Id.*

Anthony also attaches [143-3, 156] Declarations from Victor I. Fleitas and Rachel Pierce Waide—two Mississippi attorneys with knowledge of the rates charged by attorneys in this district. Fleitas attests to his knowledge of rates

plaintiffs' attorneys charge for civil rights cases). [143-3] ¶ 7. Waide attests to her knowledge of the rates charged by attorneys practicing in federal court. [156] ¶ 3.

    1.  Jim Lees

Welker and Lang argue Lees's $500 per hour rate is "too high." [163] at 5. They cite a nine-year-old case from this District, when the court reduced a $500 hourly rate to $375 for an attorney with 30 years of experience. *See Anderson v. City of McComb*, No. 5:13-CV-263, 2016 WL 4261777, at *3 (S.D. Miss. Apr. 4, 2016). Welker and Lang contend that a $400 rate is more reasonable for someone with similar experience in this District. *See Griggs v. Chickasaw Cnty., Mississippi*, No. 1:16-CV-13, 2020 WL 853532, at *2 (N.D. Miss. Feb. 20, 2020).

But Welker and Lang's argument fails to persuade. In *Anderson* the plaintiff offered no evidence on his counsel's experience and ability. *See Anderson*, 2016 WL 4261777, at *3. This case is different. Anthony submits four sworn [145-1, 145-2, 145-3, 156] Declarations from practicing attorneys to support his proposed rates. *See* [165] at 2–4. Moreover, Welker and Lang cannot rely on *Griggs*. First, as noted by the Northern District, rates are higher in the Southern District. *See McMillian*, 2025 WL 611070, at *4. Second, Welker and Lang ignored inflation. *See, e.g.*, *Reece v. Saul,* No. 18-cv-2624, 2019 WL 13210644, at *1 (S.D. Tex. Nov. 1, 2019) (adjusting rates for inflation). In fact, when adjusted for inflation, the cases Welker

and Lang cite support Anthony's proposed fee.[10] Accordingly, the Court declines to depart from his reasonable hourly rate of $500.

### 2. Brandon Flechas

Flechas has been practicing law for around 19 years, he practices in both state and federal court, he handles "complex civil rights cases," he has tried multiple cases to verdict, and he claims "[t]here has been hardly any time in the last 16 years when [he] was not the primary attorney on multiple civil rights cases at one time." Flechas Decl. [145-1]. Welker and Lang also argue Flechas's $400 rate is too high. [163] at 4–5. Making the same arguments but citing different cases, Welker and Lang believe Flechas's hourly rate should be no more than $250. [163] at 5. Incorporating the reasoning above regarding Lees's hourly rate, and taking both inflation and Flechas's experience into account,[11] this Court declines to depart from Flechas's hourly rate of $400.

In sum, after reviewing the [145-1, 145-2, 145-3, 156] Declarations and relevant precedent, the Court finds that Anthony's proposed rates of $500 per hour for Lees and $400 per hour for Flechas are reasonable for the prevailing market rate in the Southern District of Mississippi.

---

[10] $400 in February 2020—when *Griggs* was decided—equates to $499.54 in July 2025, and $375 in April 2016—when *Anderson* was decided—equates to $506.32 in July 2025. *CPI Inflation Calculator*, U.S. Bureau of Lab. Stats., https://www.bls.gov/data/inflation_calculator.htm (last visited Aug. 18, 2025).

[11] This Court has previously approved an hourly rate of $375 for an attorney with 10 years of experience and an hourly rate of $395 for an attorney with 21 years of experience. *See S. Refuge, LLC v. Bondurant*, No. 3:22-CV-637, 2023 WL 2998475, at *2 (S.D. Miss. Apr. 18, 2023).

C.  Travel Rates

The Court accepts Anthony's proposed travel rates. Anthony's counsel has

shown appropriate billing judgment, billing only 50% of their hourly rates to

account for travel time. *See* [145-4] at 25, 28; [165] at 4; *see also Watkins*, 7 F.3d at

458–59 (holding that the district court did not abuse its discretion when reducing

attorney's hourly rate for travel by 50%); *McMillian*, 2025 WL 611070, at *6.

D.  Lodestar Calculation

Including the above reductions, the Court calculates the lodestar as follows:

|  | Hours | Rate | Fees |
|---|---|---|---|
| Jim Lees | 100.6 | $500 | $50,300 |
| Jim Lees (Travel) | 32.5 | $250 | $8,125 |
| Jim Lees (Clerical) | .3 | $250 | $75 |
| Brandon Flechas | 279.2 | $400 | $111,680 |
| Brandon Flechas (Travel) | 42 | $200 | $8,400 |
| Brandon Flechas (clerical work) | .9 | $200 | $180 |
| **Total** | | | **$178,760** |

E.  Adjustment to the Lodestar Calculation

"There is a strong presumption that the lodestar award established by the

district court is the reasonable fee." *Howe v. Hoffman-Curtis Partners Ltd.*, 215 F.

App'x 341, 341 (5th Cir. 2007) (per curiam). Even so, the Court "may enhance or

decrease it based on the . . . *Johnson* factors." *McMillian*, 2025 WL 611070, at *1

(citation modified). These factors include:

- Time and labor required to represent the client
- Novelty and difficulty of the issues in the case
- Skill required to perform the legal services properly
- Preclusion of other employment by the attorney
- Customary fee charged for those services in the relevant community

- Whether the fee is fixed or contingent
- Time limitations imposed by the client or circumstances
- Amount involved and the results obtained
- Experience, reputation, and ability of the attorney(s)
- Undesirability of the case
- Nature and length of the professional relationship with the client
- Awards in similar cases[12]

*See Johnson*, 488 F.2d at 717–19. In the end, the most critical factor in a court's analysis of attorneys' fees is the degree of success obtained. *See Hensley*, 461 U.S. at 436.

The Court has analyzed the first, second, third, fifth, and ninth factors already. Welker and Lang offer two more arguments to reduce the lodestar: Anthony's degree of success and the offers of judgment.

Welker and Lang contend the lodestar should be reduced because Anthony had limited success at trial. [163] at 15-16. They say Anthony sought "nearly $70,000 in medical expenses, 'not more than' $2 million in noneconomic damages, and punitive damages" but ultimately recovered far less. [163] at 15. The Court finds this argument unavailing because, even if Anthony demanded these amounts pretrial, he did not seek damages for medical bills or lost wages at trial, and he did not ask the jury for a specific dollar amount of damages. [157] at 43, 60. The Court declines to reduce the lodestar based on Anthony's degree of success.

---

[12] The *Johnson* factors include whether the fee was fixed or contingent, but the United States Supreme Court later held that this factor should not be considered. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

Welker and Lang's next argument is more persuasive. They reassert that Anthony's claims against the City failed and argue that "all other fees prior to the dismissal of the City, for which work cannot be fairly untangled between that performed for the City and that performed for [Welker and Lang] should be reduced by 1/3." [163] at 17.

While the Court agrees some subtraction is necessary, it cannot say Anthony's counsel spent equal time litigating the claims against the City, Welker, and Lang. The Court dismissed the City from the case in July 2024, *see* [100], yet Anthony's claims against Welker and Lang proceeded to trial in April 2025 and account for much of the fees sought. To account for Anthony's two unsuccessful claims against the City, the Court will reduce the lodestar amount by 10%.

Welker and Lang also argue that this Court should consider the rejected [163-1] Offers of Judgment in determining Anthony's degree of success and that "Anthony's attorneys' fees may be appropriately cut off as of the date of the [163-1] [O]ffers of [J]udgment." [163] at 17. The Court disagrees.

Before trial, Welker made an offer of judgment for $150,000, and Lang made an offer of judgment for $25,000, for a total of $175,000. [163] at 17. At trial, the jury awarded Anthony $90,000, which was less than the offers of judgment, together or separate.[13] But once Anthony's pre-offer attorneys' fees are added, that pushes his recovery over the amounts of the offers of judgment.

---

[13] The parties disagree about whether Welker and Lang's offers of judgment can be combined to evaluate Anthony's degree of success. [163] at 17; [165] at 12-13. The Court

The issue turns on how the Court should consider Anthony's pre-offer attorneys' fees and costs, and whether those amounts "should be considered as part of the 'judgment finally obtained' for conducting the comparison called for by Rule 68." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-913, 2005 WL 1867292, at *23 (N.D. Tex. Aug. 5, 2005) (quoting Fed. R. Civ. P. 68). Welker and Lang admit, *see* [164] at 17–18, that the Fifth Circuit has not specifically addressed the issue. *Id.* at *23. But other Circuits have, concluding "if the offer of judgment includes costs and attorney's fees, the fees and costs accrued at the time of the offer should be added to the amount of the judgment for purposes of the Rule 68 comparison." *Id.* (collecting cases).

Welker and Lang's [163-1] Offers of Judgment "were inclusive of attorneys' fees and costs." [163] at 17.[14] And when the $90,000 [138] Judgment is combined with the fees and costs incurred before the April 3, 2025, [163-1] Offers, the total amount is well-above the [163-1] Offers—individually or collectively. *See* [163] at 18 (adding $107,962.70 in pre-[163-1] Offer fees and costs to the $90,000.00 Judgment, equaling $197,962.70, which is $22,962.70 more than the total [163-1] Offers of $175,000).

For these reasons,[15] the Court declines to adjust the lodestar further.

---

does not decide this issue because, in any event, Anthony's recovery was more than even the combined offers of judgment when attorneys' fees are added.

[14] Attorneys' fees were awarded in the Court's [138] Final Judgment, as well.

[15] The Court notes: The Fifth Circuit has held that "a court should consider the prevailing party's rejection of Rule 68 offer that was more favorable than the judgment obtained." *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 261 (5th Cir. 2018). And this "is

In sum, the Court will reduce the lodestar amount by 10% to account for Anthony's two unsuccessful claims against the City. No reduction is made for Anthony's degree of success or for the rejected offers of judgment. Accordingly, the Court awards $160,884. in attorneys' fees.

F.  Costs and Expenses

Anthony seeks $22,203.36 in litigation costs and expenses.[16] *See* [145] at 1; Itemization of Expenses [145-5]; Bill of Costs [147]. Welker and Lang challenge this request. *See* Objs. to Bill of Costs [159]; [163] at 19–21.

Three sources of law determine what fees are recoverable here: Federal Rule of Civil Procedure 54(d)(1), 28 U.S.C. § 1920, and 42 U.S.C. § 1988. Rule 54(d) allows courts to award costs to the prevailing party in any civil action, but Section 1920 limits this award to the narrow list of "taxable costs" in Section 1920.[17] Section 1988, by contrast, allows prevailing parties in civil rights actions to recover all reasonable expenses that would ordinarily be billed to a fee-paying client. *See Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). In this circuit, requests for litigation expenses under

---

one factor among many that a district court may consider in exercising the discretion the fee-shifting statute gives it." *Id.* (citation modified). The Court recognizes the discrepancy between the [163-1] Offers and the jury award alone, but it cannot say Anthony's counsel "fail[ed] to exercise good judgment in obtaining successful results." *Id.* (citation modified).

[16] These include $6,787.12 from the [147] Bill of Costs, $10,404.16 for Flechas's expenses, and $5,012.08 for Lees's expenses. *See* [145-5] at 1.

[17] Taxable costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. *See* 28 U.S.C. § 1920.

Section 1988 are procedurally like the motions for costs under Rule 54(d). *Id.* at 381. But the substantive standard is set by Section 1988, which expands recovery beyond the narrow categories listed in Section 1920.

For the reasons below, the Court subtracts $1,866.10 from the figure Anthony requests.

    1.  [147] Bill of Costs

    a.  Pro Hac Vice Fees

First, Welker and Lang "object to Anthony[] seeking to recover pro hac vice [] fees and fees related to certificates of good standing." [163] at 20; *see also* [159] at 2. They argue that because this "Court has held that pro hac vice fees are not reimbursable. . . . [t]he same should be true for obtaining certificates of good standing." [163] at 20 (citing *Thomas v. Reeves*, No. 3:18-CV-441, 2021 WL 517038, at *13 (S.D. Miss. Feb. 11, 2021) (collecting cases)). In response, Anthony argues the $100 pro hac vice fee is a "reasonable out of pocket expense charged by the Court[,] which would normally be billed to a fee-paying client, and as such, it should be recoverable under [Section] 1988." Resp. [162] at 2.[18]

The Court agrees with Welker and Lang for four reasons. First, neither Federal Rule 54 nor 28 U.S.C. § 1920 specifically authorize pro hac vice fees as taxable costs. And the Fifth Circuit has not yet decided whether these fees are recoverable. *See DeLeon v. Abbott*, 687 F. App'x 340, 348 (5th Cir. 2017) (per

---

[18] Anthony does not address the certificates in either his [165] Reply or his [162] Response.

curiam) (Elrod, J., concurring in part). And Anthony fails to show his need for counsel outside those licensed to practice in this District. *See Rolex Watch USA Inc. v. Beckertime LLC.*, No. 4:20-CV-1060, 2023 WL 4155430, at *2 (N.D. Tex. Mar. 28, 2023) (explaining pro hac vice fees "are an expense that an attorney pays for the privilege of practicing law in a district and should not be taxed to a Defendant simply because Plaintiff chooses to be represented by counsel not admitted to practice in the district"). Finally, the precedent in this District counsels against awarding pro hac vice fees. *See Multiplan, Inc. v. Holland*, No. 1:14-CV-315, 2020 WL 1128202, at *2 (S.D. Miss. Mar. 6, 2020) (collecting cases).

Accordingly, the Court declines to award Lees's $100 pro hac vice fee or his two $25 fees for certificates of good standing. So the Court subtracts $150 from the total cost award. *See* [147-1]; Lees Expenses [155] at 2.

b.  Private Process Server Fees

Next, Welker and Lang argue that Anthony's private process server fees are not recoverable under Section 1988. [163] at 21; [159] at 2–3. In response, Anthony argues the Fifth Circuit has "noted with approval" that Section 1920 allows awards of private process server fees as costs. [162] at 2; *see Gaddis v. United States*, 381 F.3d 444, 456 (5th Cir. 2004). Alternatively, he insists the private process server fee is a "reasonable cost incurred and should be allowed under [Section] 1988." [162 at 2.

Anthony cannot rely on *Gaddis*. The *Gaddis* Court did not adopt this interpretation as law. *See Marmillion v. Am. In't Ins.*, 381 F. App'x 421, 431 (5th

Cir. 2010) (per curiam). Rather, *Gaddis* requires Anthony to demonstrate exceptional circumstances to be entitled to costs for private process server fees. *Id.* He has not done so. As a result, the Court declines to award these fees, reducing the total cost award by $643. *See* [147-1] at 1.

      c.  Deposition Fees

Welker and Lang also dispute paying fees related to several pretrial depositions. [159] at 3. First, they claim deposition transcripts for Tyler Lents, James Saucier, and Naomi Villareal are not recoverable because those individuals did not testify at trial. *Id.* Next, they insist on paying a reduced amount for any depositions Anthony took before he conceded his claims against the City. *Id.* Finally, Welker and Lang object to paying for Anthony to copy their videotaped depositions. *Id.* Anthony responds that the contested fees were part of necessary and appropriate discovery and that no reduction is warranted. [162] at 2-3.

The Court awards these fees. In the Court's view, these fees were reasonable out-of-pocket-expenses incurred in the ordinary course of litigation. Lents, Saucier, and Villareal were all listed as potential defense witnesses on the [128] Amended Pretrial Order. [128] at 12. No discovery distinctions were made to disentangle Welker and Lang from the City. And the use of Welker and Lang's video depositions was reasonable and effective for trial purposes. The Court awards these costs.

### d. Witness Fees

The Court subtracts $178.88 from the total fee award because Anthony concedes the checks equaling $178.88 "were not used and have been returned." [162] at 4; *see also* [159] at 4; Checks [159-1].

### e. Printing Fees

Lastly, Welker and Lang object to Anthony's costs associated with printing. [159] at 4–5. Anthony responds, claiming these printing costs are "clearly recoverable" because he maintained "only what paper copies were necessary and reasonable for the prosecution of the case." [162] at 4.

Generally, a prevailing party should be allowed costs under Rule 54(d)(1). *See also* 28 U.S.C. § 1920 (allowing "fees and disbursements for printing"). These costs solely account for printing; the Court awards them to Anthony.

### 2. Remainder of Expenses

### a. Meals

Welker and Lang assert they "should not be required to pay expenses for alcohol or excessively expensive meals." [163] at 19.[19] But courts have found "[m]eals for an out-of-town trial are reasonable litigation expenses and are recoverable." *Miles v. Walmart Assocs., Inc.*, No. 4:19-CV-756, 2022 WL 275520, at *6 (N.D. Ala. Jan. 28, 2022) (citation modified). Because these meals constitute

---

[19] Anthony concedes that a $42.97 alcohol charge was "simply an oversight," which he "voluntarily withdraws the request for reimbursement." [165] at 13 n.18; *see* Receipts [155-4] at 10. The Court accordingly reduces the award by $42.97.

reasonable out-of-pocket travel expenses, the Court awards them—reducing only $42.97 for alcohol from the total award.

> b. Hotel Rooms

Welker and Lang also argue they should not have to pay for four hotel rooms, reasoning that Anthony resides locally and did not require additional lodging. [163] at 20. Anthony responds, explaining the four rooms accounted for Anthony, Lees, Flechas, and expert witness Cameron Huxford—with Huxford staying only one night. [165] at 14. Anthony's counsel "believed it prudent that [Anthony] remain at the hotel . . . to avoid even the appearance of impropriety," because he resided with Brandis Quick—a witness in the case, "with whom he would not have been allowed to converse." *Id.*

As these hotel rooms constitute reasonable out-of-pocket travel and trial expenses, and the Court recognizes the rationale behind the decision to book four rooms, the Court awards these expenses. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003) ("[W]e have affirmed awards of out-of-pocket travel expenses as components of attorney's fee recoveries under [Section] 1988").

> c. Duplicate Deposition Transcript

Anthony concedes the $320 duplicate charge for the deposition transcript in both the [147] Bill of Costs and the [145-5] Itemization of Costs "was an oversight." [165] at 14; *see* [163] at 20. Anthony "voluntarily withdraws the duplication and requests the $320 only be reimbursed once." [165] at 14. The Court thus reduces $320 from the total award.

27

d.  Deposition Syncing

Welker and Lang finally challenge the $531.25 expense for the synced videos of their depositions. *See* [163] at 20; [145-5] at 1. They argue Anthony failed to show "why this cost[] is reasonable or necessary." [163] at 20.

Because Anthony does not address this argument in either his [165] Reply or [162] Response, the Court declines to award this expense and subtracts $531.25 from the total expense award.

\*    \*    \*

In all, the Court reduces Anthony's costs and expenses award by $1,866.10 dollars. So the Court awards a total of $20,337.26 in costs and expenses.

V.    Conclusion

For the above reasons, the Court DENIES the City's [140] Motion for Attorneys' Fees and GRANTS IN PART AND DENIES IN PART Anthony's [145] Motion for Attorneys' Fees, Costs, and Expenses. The Court awards $160,884 in attorneys' fees, and it awards $20,337.26 in costs and expenses. In doing so, the Court has considered all the arguments raised. Those arguments not addressed would not have altered the Court's decision.

SO ORDERED, this 12th day of September, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE